### John Moynihan *vs.* Hills Company.

Hampshire.    September 28, 29, 1887. — May 4, 1888.

Present: Morton, C. J., Field, Devens, W. Allen, C. Allen, Holmes, & Knowlton, JJ.

*Master and Servant — Negligence — Due Care — Fellow Servant — Personal Injuries.*

Evidence that a servant, while properly using a machine, not known to him to be out of repair, was injured by the breaking of an iron rod thereon, the break not appearing to be a fresh one, and that the master had caused the rod, which had been used for nearly two years without inspection and was subjected to a strain

tending to make it brittle, to carry double the weight placed on it by the maker of the machine, warrants a finding that the servant was in the exercise of due care, and that the master was guilty of negligence.

If a master, who is not a mechanic and who has no practical knowledge of machinery, intrusts the reconstruction of a machine to a machinist in his employment, to adapt it to a new use, tells him to act according to his own judgment in so doing, and directs him to take charge of it when done, and to repair it when necessary, the negligence of such machinist is imputable to the master.

TORT for personal injuries sustained by the plaintiff, on May 10, 1884, while in the defendant's employment. At the trial in the Superior Court, before *Barker*, J., there was evidence tending to prove the following facts.

The defendant, a corporation engaged in the business of manufacturing and finishing straw hats, in 1880, purchased, upon the recommendation of its superintendent, new machinery, to be operated by steam power, for pressing the crowns of hats, from a manufacturer of such machinery in Norwalk, Connecticut. The defendant's officers were not mechanics, and had no practical knowledge of machinery. Each of these machines was constructed with a ball suspended upon a rod, and weighing one hundred and thirteen pounds, which acted as a counterbalance to that portion of it called the dome, by which the pressing was done, and which weighed about six hundred pounds. In 1882 or 1883 the defendant caused four of the machines to be rebuilt, so as to press the brims of hats as well as the crowns at the same time. The dome in each was made larger and heavier in order to accomplish this, and the counterbalancing weight was increased by placing another ball of equal weight upon the rod already in use in each machine. Mitchell Marcil, a competent and skilful machinist, had charge of the defendant's machinery, and was given the entire charge by it of the reconstruction of the four machines, having for that purpose three assistants. The machines were set up on a bench, through which the weights passed vertically while they were in operation. The weights in passing up and down acquired a pendulum motion, the weights sometimes striking the side of the building and the floor, wearing away a portion of each, and the rods striking certain iron pipes along the side of the building. The blows so received by the weights and the rods themselves had a tendency to cause a rod of iron so situated to take on a crystalline structure and become

brittle, the proper method of preventing which was by annealing the rod from time to time.

On May 10, 1884, the plaintiff, who was twenty-seven years old, was pressing hats upon one of the reconstructed machines in a usual and proper manner, when the rod sustaining the weights on it broke, and let the dome down upon the plaintiff's hand and wrist, crushing the bones, so that it became necessary to amputate the hand. Prior to the accident, the plaintiff had worked upon the different hat-pressing machines more or less for three years, and had some knowledge of their construction and operation, and the danger attending the use of them, but he had not worked on the machine in question for more than a month, and had no knowledge that it was out of repair. The rod broke at a point that was slightly discolored, as if it were not a fresh break, and as if there had been a flaw there. The rods in the four machines were examined, at the time of the reconstruction, by an assistant of Marcil, and they were examined again in January, 1883, when an extra nut was put upon each rod below the weights; but there was no inspection of them at any time by Marcil.

Albion F. Bemis testified that he was the defendant's secretary and treasurer, its superintendent, and a director; that there were three directors, neither of whom was a machinist; that he had no practical knowledge of the use of tools and machinery; that he had not examined the rod prior to the accident; that Marcil was the defendant's general machinist, and had charge of the machinery; that he was called upon to do any work that required a machinist, and was directed to see what needed to be done, and to do it; that supplies, tools, and proper material were furnished to keep all these machines in proper condition; that Marcil "had charge of the building these machines, fixing them over"; that "the matter of changing them over was intrusted entirely to" Marcil; that Marcil "was left to do the fitting up of that machine on his own judgment." As to the broken rod he testified as follows: "I saw both parts where it broke; I saw it again in the office before I sent Walker, the clerk, to the blacksmith shop, relative to getting another rod to keep the press running; as I remember it, it was a break nearly straight across; it appeared to me it was not of equal brightness all the way across, as though there had been a check there, or

something of that sort; it broke very nearly square across; as I remember it, there was a slight discoloration there, as though there had been a flaw; it was slightly discolored, as if it was not a fresh break. I don't think it was' very noticeable; it was not a black spot, but it appeared to me as though the iron had not freshly parted. . . . . My attention was particularly called to the break, but I did not notice anything outside of that; of course I must have looked the rod over at the time, but my attention was mainly directed to the break. I examined each end; it appeared dull or cloudy like; it seemed to me as though there had been a flaw or check there, or something of that sort."

Marcil testified that he was the defendant's head machinist; that he had worked as a machinist at different places for about twenty four years; that he was placed in charge of the defendant's machinery; that the hat-pressing machines were used at first without success, and that he thought that he could make a success of them, and could fix them, and was told so to do; that it took him about four weeks, after he got the castings and various parts, to rebuild the machines, with the assistance of three men; that the balls were placed on the machines to counterbalance the dome; that he never weighed the balls, but thought that the rods on which they were placed were strong enough; that the rods looked all alike to him, and he thought they were safe; that at the time he set up the machines he noticed the rod which broke only long enough to put on the balls and nuts; that he must have handled the rod at that time; that he saw no appearance of any defect whatever; and that none of the rods in the other machines had broken that he knew of. On cross-examination he testified: "I did not put this machine together the first time; I did not notice this rod at any time; I did not notice it the second time any more than to put it on; I did not inspect it; I did not accustom myself to look this machine over, any more than when I got it done I thought it was all right; when I got it done I did not look at it again until the time of the accident; I do not remember ever inspecting that rod from the time it was set up until the day Moynihan was hurt; I do not remember having any instruction from Bemis about it in any way whatever; I do not believe I ever noticed that hole in the floor until after Moynihan was hurt; I do not remember as

I ever noticed about the flaw until after Moynihan was hurt; I do not remember as I ever noticed the worn spot on the side of the rod; I do not remember as I ever noticed the wearing on the floor or on the water pipe; I do not remember about the wall; I never was instructed to go through that room and inspect the machines, only when they come to tell me something give out."

. The defendant asked the judge to rule, that on the evidence the plaintiff was not entitled to recover; that there was no evidence that Marcil was not a competent man for the defendant to employ and intrust with the reconstruction and repair of the machine; that the defendant was not negligent in so employing him and so intrusting him; and that if the accident happened by reason of the negligence of Marcil, the plaintiff could not recover.

The judge declined so to rule, but instructed the jury that there was evidence tending to show that Marcil was employed by the defendant in order to make repairs and reconstruct the machine; that there was evidence that he was an experienced and skilful mechanic, and no evidence tended to show that he was otherwise; that upon the evidence the defendant was not negligent in intrusting to him the repairs and reconstruction of the machines; that it was a question of fact for them to decide, whether Marcil was negligent in making those repairs and in reconstructing this machine; and that if Marcil was negligent, then his negligence would not be that of a fellow servant, but of the defendant, for which the defendant would be answerable if such negligence was the sole cause of the injury.

The jury returned a verdict for the plaintiff for $4,125; and the defendant alleged exceptions. The case was argued at the bar in September, 1887, and afterwards was submitted on briefs to all the judges.

*D. W. Bond & J. I. Cooper*, for the defendant.

*J. C. Hammond*, for the plaintiff.

KNOWLTON, J. The defendant's request for a ruling that upon the evidence the plaintiff was not entitled to recover, was rightly refused. There was testimony tending to show that the plaintiff was using the machine in a proper manner, and that he did not know it was out of repair. This would warrant a find-

ing that he was in the exercise of due care. The fact that the machine broke, in the manner described, from the use for which it was intended, was evidence that it was defective and unsafe, and the fact that the defendant was then using it in its business, if left unexplained, was some evidence of the defendant's negligence. *White* v. *Boston & Albany Railroad*, 144 Mass. 404. But, beyond that, it was proved that the rod which broke was designed to carry one iron ball weighing about one hundred and thirteen pounds, and that under the defendant's direction the machine had been reconstructed, and the rod made to carry two such balls. There was also testimony that it had been subjected to a use which caused the iron in the rod to vibrate while under a strain, and which tended to crystallize it and make it brittle, and that there had been no inspection of it to ascertain its condition for nearly two years before the accident. The defendant's secretary and treasurer, who was also its superintendent and one of its directors, testified that the rod was slightly discolored at the place of the fracture, as if the break was not fresh, and that it appeared to him as if the iron had not freshly parted. Upon this evidence it was for the jury to decide whether or not the defendant was negligent.

The court was also requested to rule, that, if the accident happened by reason of negligence of Marcil, the plaintiff could not recover. This ruling was refused, and the jury were instructed that negligence of Marcil in making the repairs and reconstructing the machine would be negligence of the corporation, for which the corporation would be answerable if it was the sole cause of the injury. The principal question in the case is whether or not this instruction was correct.

The rights of a plaintiff who has been injured by defective machinery of a defendant for whom he was working, depend upon the contract, express or implied, under which he was employed. In making a contract for service, if the business is to be carried on by many persons working together in a factory, the parties naturally contemplate the existence of machinery, tools, and appliances, and the presence of other employees, who will be fellow servants of him who is contracting to serve. In the absence of an express stipulation, the master impliedly agrees to provide and maintain reasonably safe and suitable machinery and appliances,

so far as the exercise of proper care on his part will secure them, and the servant agrees to assume all the ordinary risks of the business, and among them the risk of injury from negligence of his fellow servants. This obligation which the master assumes is personal, and pertains to him in his relation to the business as proprietor, and in his relation to the servant as master. It has been repeatedly held that he cannot discharge it by delegating the performance of his duty to another. *Ford* v. *Fitchburg Railroad*, 110 Mass. 240. *Kelley* v. *Norcross*, 121 Mass. 508. *Killea* v. *Faxon*, 125 Mass. 485. *Elmer* v. *Locke*, 135 Mass. 575. *Lawless* v. *Connecticut River Railroad*, 136 Mass. 1. *Flike* v. *Boston & Albany Railroad*, 53 N. Y. 549. *Hough* v. *Railway*, 100 U. S. 213. And if he employs agents or servants to represent him in the performance of this duty, they are to that extent agents or servants for whose conduct he is responsible.

The very nature of the implied contract created by the hiring, whereby he undertakes to use proper care in always providing safe tools and appliances, is inconsistent with his delegation of the duty to a fellow servant, for whose negligence he is not to be responsible. His obligation involves the exercise of every kind of care and diligence which is necessary to give him knowledge of the condition as to safety of his machinery and appliances, so far as such knowledge is obtainable by reasonable effort. His duty relates to the condition of these articles when they come to the hands of his servants for use, and the performance of that duty must carry him just so far into details as it is reasonably necessary to go, in view of the nature and risks of the business, to enable him reasonably to protect his servants from a danger which he should prevent.

It is obvious that difficult questions arise in cases of this kind in determining the implied obligations of the respective parties under peculiar circumstances. In many kinds of business the condition of a machine as to safety is constantly changing with the use of it, and it is safe or unsafe at a given moment according as it is properly or improperly used and managed by the servant who operates it. Moreover, certain kinds of repairs can be conveniently and properly made, under direction and supervision, by servants regularly employed in the business. In such cases both parties to the contract of service must be presumed

to have contemplated that, to a certain extent, fellow servants would be employed by the master to do work in keeping the machinery safe. Work negligently done within that field, if an accident should happen from it, would seem at first to introduce a conflict between the obligation of the master to hold himself liable for want of due care in keeping his machinery safe, and the obligation of the servant not to claim damages resulting from negligence of a fellow servant. It becomes necessary therefore to consider the rights of the parties in such cases. The application, in each particular case, of any general rules which may be laid down will involve a consideration of two questions of fact: First, what is the nature and character of the business, and the usual and proper general method of conducting it? Secondly, in such a business, what is reasonably necessary to be done on the part of the master to secure for the use of the workmen machinery and appliances which will always be reasonably safe?

First, there is that class of cases in which the condition of a machine as to safety is constantly changing with its use, so as to require from the persons tending it, as a part of the ordinary use of it, reconstruction or readjustment of parts, as they become worn out or displaced, from materials or new parts supplied by the master for that purpose. Such work is a part of the regular business of the servant in using the machine, and not of the master in maintaining it. Negligence in doing it is, as to all other employees, negligence of a fellow servant. So far as the condition of machinery depends upon this kind of attention, the master does his duty if he employs competent and suitable persons, and supplies them with everything needed for their work.

A second class of cases includes those in which repair or reconstruction of a machine is necessary, of such a kind as is commonly done, or may properly be done, under the direction of the master, by servants engaged in the general business. Both parties to the contract must be presumed to have contemplated that such work would be done by fellow servants of the employee, and he must therefore be held to have assumed all risks from their negligence in doing it. But this, it must be remembered, is a part of that work for the results of which, in the completed machine, the master agrees to hold himself responsible, so far as

good results can be insured by his exercise of proper care.   And so he is bound to bring to this department of the business, either in his own person or by an agent, such intelligence, skill, and experience as is reasonably to be required in one to whom in an important particular the safety of others is intrusted, and he is bound also to be reasonably diligent and careful in the use of his faculties.   One who represents him in this field is not acting as a fellow servant with his other employees, within the meaning of the rule which we are considering, but is his agent or servant, for whose care and diligence he is accountable.

There may be still a third class of cases, in which a machine is of such a kind, and the nature of the business in which it is used is such, that the parties could never reasonably have contemplated that any servants employed in the business would build or reconstruct it.   A proprietor might buy such a machine, or send an agent or servant to buy it.   In either case the purchase would be in the line of the master's duty, and he would be liable for the consequences of negligence in making it.   He might hire privileges and men in a machine-shop in a distant city, and build it there.   His servants in that work would not be fellow servants with an employee engaged in an entirely different business.   And under the doctrine of *respondeat superior* he would be held liable for the consequences of their negligence.   If he saw fit to construct or reconstruct it, in the same way, in or near the building in which it was to be used, the result would be the same.   Upon our hypothesis it would be inconsistent with his implied contract to employ fellow servants of his employee in this work, and he therefore could not relieve himself from his general obligation as to the safety of his machinery by setting up that his servants in the construction or reconstruction were fellow servants with his employees in the business in which it was to be used.

It is believed that the decision in every case in this Commonwealth founded upon alleged negligence of a master in relation to his machinery, tools, or appliances, will be found, upon the view of the facts taken by the court, to be governed by the principles which we have stated.   *Elmer* v. *Locke*, 135 Mass. 575.   *Johnson* v. *Boston Tow-Boat Co.* 135 Mass. 209.   *Rogers* v. *Ludlow Manufacturing Co.* 144 Mass. 198.   *Holden* v. *Fitch-*

*burg Railroad,* 129 Mass. 268. *Spicer* v. *South Boston Iron Co.* 138 Mass. 426. *McGee* v. *Boston Cordage Co.* 139 Mass. 445. *Arkerson* v. *Dennison,* 117 Mass. 407. *Gilman* v. *Eastern Railroad,* 10 Allen, 233, and 13 Allen, 433. *King* v. *Boston & Worcester Railroad,* 9 Cush. 112; *S. C.* 129 Mass. 277, n. See also *Northern Pacific Railroad* v. *Herbert,* 116 U. S. 642; *Benzing* v. *Steinway,* 101 N. Y. 547.

The facts in this branch of the case at bar are undisputed. The defendant was carrying on the business of manufacturing and finishing straw hats. The plaintiff was injured upon one of several heavy iron machines operated by steam power, manufactured for the defendant in Norwalk, Connecticut. The defendant reconstructed this and three other machines, so as to make them press the brim of hats as well as the crown, they having originally been built to press the crown only. This very materially changed the machine. Mitchell Marcil, who had charge of the work, testified that, after they got the castings and everything ready to put on it, it took him and three other men about four weeks to rebuild it.

None of the officers of the defendant corporation were mechanics, or men having practical knowledge of machinery. They left the reconstruction of the machines entirely to Marcil, to be done upon his own judgment. He also had charge of the machines all the time, and was directed to see what was needed to be done, and to do it. Assuming that this was a machine upon which the defendant might, under its implied contract with the plaintiff, employ his fellow servants in the work of reconstruction, it is evident upon the undisputed testimony that Marcil, while he did some work appropriate for an ordinary servant, was, in relation to the reconstruction and to the charge of this machine, set to do the master's duty. The defendant's officers were personally incompetent to use that skill and judgment in regard to keeping these machines safe which the law required of the defendant, and they left to Marcil the whole business, not only of determining what should be done in reconstructing the machines, and how it should be done, but also of determining what was their condition as to safety when they were finished, and of supervising them in reference to their condition afterward. Taking charge and having supervision of the reconstruction,

and of the machines afterward, was a part of the master's duty under his implied contract with the plaintiff. Inasmuch as the defendant assumed to do it through Marcil, it is liable for the consequences of his negligence. To hold otherwise would be to permit a master, who is incompetent to perform a duty which the law puts upon him in relation to the condition of his machinery, to relieve himself from all responsibility for the performance of it by employing another to represent him. In the opinion of a majority of the court there was no error in the instructions.

*Exceptions overruled.*