WILLIAM K. SIDDALL *vs.* PACIFIC MILLS.

Essex.    November 8, 1894. — November 27, 1894.

Present : FIELD, C. J., ALLEN, KNOWLTON, & BARKER, JJ.

*Personal Injuries — Negligence of Fellow Servants — Duty of Employer to inexperienced Boy.*

If, in an action for personal injuries, it may be assumed in favor of the plaintiff, a boy thirteen years old, without deciding the point, that the risk of particular dangers from the negligence of fellow servants may sometimes be so great and so obvious to the employer that he ought to give an inexperienced boy warning and instruction in regard to them, he is called upon so to do only when he himself ought reasonably to appreciate them, and when his instruction would be likely materially to diminish the danger to his employee ; and there is no evidence to warrant a finding that he owed the plaintiff such a duty, if the danger of injury was remote and improbable, and nothing which the plaintiff could have done consistently with the expeditious transaction of the work could have relieved him from the possibility of the accident.

TORT, for personal injuries occasioned to the plaintiff while in the employ of the defendant corporation.

---

At the trial in the Superior Court, before *Bond*, J., the plaintiff offered evidence tending to prove the following facts.

He entered the employ of the defendant on July 5, 1892. He was thirteen years of age and had never before worked in a mill or about machinery, and this fact was known to the overseer of the bleaching-room, one Paisley, who hired him, and to the second hand of the room, one Campbell, who set him at work in a part of the room where other boys were employed, telling him that one of the boys would show him what to do. The work that he was then set to do required him to guide cloth into a wooden vat, involved no knowledge of machinery, and exposed him to no danger. In another part of the room were several large wrought iron tanks, about twelve feet in depth and about ten feet in diameter, in which cloths were treated in the process of bleaching by the use of steam and a hot solution of caustic soda. In the top of the bleaching tanks were two man-holes large enough to admit a small boy. By means of rollers attached to the ceiling of the room, the pieces of cloth to be bleached, which were sewed together so as to form one continuous strip of eight hundred pieces of from forty to forty-five yards in a piece, were conducted into the bleaching tanks through one of the man-holes. A boy in each tank would direct the strip of cloth as it came from the rollers so as to distribute it evenly and compactly into the tank. When the tank was filled with cloth to within two or three feet of the top, a boy would cover the mass of cloth with pieces of burlap. The boy would then leave the tank, and the man in charge of the tanks, one Elliott, would fasten the covers of the man-holes and would open the valve in the caustic soda solution pipe connected with the bottom of the tank, and the caustic soda solution would ooze up through the mass of cloth. When all the caustic soda solution was thus transferred into the bleaching tank, it would saturate the mass of cloth up to within about three inches of the top of the cloth. By opening the valve in a steam pipe which was also connected with the bottom of the bleaching tank, steam was then admitted, and the cloths were treated to a boiling process for five or six hours.

The bleaching tanks were so constructed that the bottom halves of them were below the floor of the room in which the

plaintiff was at work, so that the valves and pipe connections were visible to one only when he went into the cellar.

On the afternoon of July 7, the plaintiff, who had never been in the cellar and who had never observed or had anything to do with the bleaching tanks, was taken away by Campbell from his work previously described, and told by him that he was about to learn something new, and was further told by him to go to work upon the bleaching tanks, and that Elliott, who had special charge of the bleaching tanks for several years under the overseer and second hand, would show him what to do.

Under Elliott's direction, the plaintiff went into one of the tanks and spread the pieces of burlap over the cloth which had previously been packed in the tank by another boy. It took the plaintiff from ten to fifteen minutes to do this work, and when it was done he went back to the other part of the room and resumed his regular work.

He was called by Elliott two or three times during the rest of the afternoon to do the same thing in the bleaching tanks.

On the morning of July 8 he was again called by Elliott, and directed to go into one of the bleaching tanks and spread the burlaps over the mass of cloth. It was dark inside of the tank, but it was not so dark but that the plaintiff could see to do the work of spreading the burlaps over the cloth as some light came in through the man-holes.

The cloth had been packed by another boy, and in the mass of cloth there was a depression three or four inches deep, caused by that boy in standing on the cloth while doing his work. As the plaintiff was on his hands and knees on top of the cloth in the tank and reaching out in the darkness, spreading the burlap, he put one of his hands into the depression, which he was unable to see, and, losing his balance, fell over on his side into a pool of the caustic soda solution, which had been negligently turned on to the bleaching tank by Elliott, and which had oozed up through the cloth and filled the depression, and was severely scalded and burned by the solution.

Elliott, who was called as a witness for the plaintiff, testified that he turned on the caustic soda solution either before or after he sent the plaintiff into the tank, and that he did it through a mistake.

The plaintiff was entirely ignorant of the process that was carried on in the bleaching tanks, did not know that a solution of caustic soda was used in them, did not know that caustic soda would burn, was never cautioned, warned, or instructed by anybody, and did not know or learn from any source, that the work in the bleaching tanks was dangerous.

Elliott had been told several times by the overseer of the room never to turn on the caustic soda solution in the bleaching tanks until after the boys had finished their work in them ; but the overseer had never made any particular observation to see whether his instruction in this respect was complied with by Elliott.

Paisley and Campbell, who were called as witnesses for the plaintiff, testified that they knew at the time of his employment that he had never worked in a mill before, and that they had never given him any warning or instruction as to his work, or as to the possibility of Elliott's turning on the caustic soda solution prematurely ; and that neither of them ever knew nor had reason to know or believe that Elliott, who had been in the employ of the defendant in charge of said tanks for several years prior to the date of the plaintiff's injury, had ever before violated his instructions not to turn on the solution of soda and hot water until the boys were out of the tanks.

The bleaching-room was about eighty feet in length and about forty-five feet in width, and the overseer's office was in about the centre of the room, in which were employed about fifty persons, men and boys.

Upon this evidence the judge directed a verdict for the defendant, and, at the request of the plaintiff, reported the case for the determination of this court. If the facts disclosed any cause of action against the defendant, the plaintiff was to have leave to amend his declaration, if necessary ; and if, upon the foregoing evidence upon any form of declaration the plaintiff was entitled to maintain an action at common law against the defendant, then the verdict was to be set aside and a new trial granted.

*J. P. Sweeney*, for the plaintiff.

*E. T. Burley*, for the defendant.

KNOWLTON, J. The direct and proximate cause of the injury from which the defendant suffered was the negligence of a

fellow servant. It was negligence of such a kind that no instruction which the defendant could have given the plaintiff in regard to the method of doing his work would have been likely materially to diminish the risk of injury from it. The risk of injury from negligence of his fellow servants is one which an employee assumes by virtue of his contract to engage in the service, even though neither he nor his employer can foresee the dangers which may result from such negligence. Ordinarily, the employer is not called upon to instruct a young and inexperienced person in regard to dangers which can only result from the negligence of fellow servants. It is not to be presumed that others will neglect their duties, and a boy cannot expect to be instructed as to what to do in a situation which is not to be expected in the ordinary course of the business, and which can only exist through the fault of another. But if we assume in favor of the plaintiff, without deciding, that the risk of particular dangers from this cause may sometimes be so great and so obvious to the employer that he ought to give an inexperienced boy warning and instruction in regard to them, he is called upon so to do only when he himself ought reasonably to anticipate them, and when his instruction would be likely materially to diminish the danger to his employee. In the present case there is no evidence to warrant a finding that he owed the plaintiff such a duty. The danger of such an injury was very remote and improbable. It could only come from negligence which the employer had no reason to expect. Moreover, nothing which the plaintiff could have done consistently with the expeditious transaction of the work could have relieved him from the possibility of such an accident. The solution of caustic soda might be turned on after he had entered the tank through the man-hole, as well as before, and he would have no means of knowing it. In the present case, Elliott, who was called by the plaintiff, testified that he turned it on either after or before, without professing to know more definitely. We are of opinion that there was no evidence on which the jury could have found that the accident resulted from failure of the defendant to perform any duty which it owed to the plaintiff.

*Judgment on the verdict.*