PETER BJBJIAN *vs.* WOONSOCKET RUBBER COMPANY.

Suffolk.     March 26, 1895. — September 4, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Due Care — Negligence — Dangerous Machinery —*
*Instructions to Employee — Fellow Servant.*

An employer is not liable for the negligence of an employee whose daily duty it is to oil machinery, and who, on a single occasion, after oiling it, leaves it in a dangerous condition, whereby another employee is injured.

The plaintiff, an adult foreigner, understanding English imperfectly and unfamiliar with machinery, was put at work on a compounding machine in the defendant's rubber factory in charge of a fellow workman, who instructed him as to his duty. The machine consisted of two heated steel cylinders, closely set, and revolving in opposite directions, between which pieces of rubber and chemicals to be combined were slowly ground. It was the duty of the plaintiff to feed the machine with material, which he guided either with his hands or with a hoe. During the noon hour of the second day on which the plaintiff was so employed, and in his absence, a fellow workman, who had further separated the cylinders for the purpose of oiling them, failed to readjust them. The increased distance between them was not obvious, and the plaintiff, unaware that their position had been or could be altered, on returning to his work, placed a piece of rubber between them, and guided it with his hands as he had been taught. The rubber fell through the cylinders suddenly, and the plaintiff, perplexed, turned for advice to his instructor, who merely laughed, and the plaintiff, interpreting the laugh as a direction to do as before, again attempted to guide the rubber with his

hands, which were drawn into the machine and injured. *Held,* that the questions whether the defendant was at fault in not giving the plaintiff instruction or warning, and whether the plaintiff was in the exercise of due care, were for the jury.

TORT, for personal injuries sustained by the plaintiff while in the employ of the defendant. At the trial in the Superior Court, before *Sherman,* J., there was evidence tending to show that at the time of the accident the plaintiff was engaged in compounding rubber at the defendant's factory on a machine which consisted of two smooth heated steel cylinders, each about four feet long and fifteen inches in diameter, set in an iron frame horizontally with the floor, heated, and revolving in opposite directions, one at about three times the speed of the other. At each end of the frame, on the side of the machine where the operator worked, and in plain sight, was an iron screw about three inches in diameter, standing out about fifteen inches from the machine, which was used to push the cylinders nearer together, or separate them, as required.

The process of compounding rubber consists of placing a quantity of pure rubber on the cylinders, and, as it is caught between them and ground through, of throwing on it chemicals which are to be combined therewith. The rubber is ordinarily placed endwise in the machine, and is steadied with the hand for a moment until it catches, but small pieces are usually thrown in, and the rubber is frequently given a quick irregular motion as the machine grips it, and sometimes is thrown entirely out. When, for any reason, it does not readily catch in the cylinders, an appliance called a " hoe " is used for pressing it into the cylinders. When compounding rubber the cylinders are not over one eighth of an inch apart, but when used for grinding it they are sometimes separated a little more, and when the grinding is finished they are restored to their original position, but any change in their adjustment is discretionary with the operator. As the operator stands in front of the machine, he cannot by looking at the cylinders see how far apart they are, and it is dangerous for him to bend over and look down between them. When the machine is in operation, conversation in an ordinary tone is impossible, unless the voice is exceptionally clear.

The plaintiff was an Armenian, of ordinary intelligence, who

came to this country in 1889. At the time of the accident, which occurred on June 13, 1893, he was forty-two years old. At that time he understood English very imperfectly, and was unfamiliar with machinery. On Monday, the day before the accident, he was put to work on a compound mill, and an experienced workman, one Healy, was instructed by the foreman to look out for him. For a few days previous to the accident, the plaintiff had been employed in wheeling material from the compound room to the compound mills, during which time he had constantly passed by the compound mills, but he had paid no attention to them, nor to the manner in which they were operated.

The plaintiff testified that, on the day before the accident, the foreman took him to the machine where he was injured, and said something to the man in charge of the next machine which the plaintiff did not understand ; that this man, Healy, showed him once with his hands and by signs and motions how to work, after which he, the plaintiff, did it once ; that Healy stood by him five or ten minutes going through the operation, and that then he did it himself under the direction of Healy, and the latter went back to his own machine near by, and that he worked on the machine the rest of the day, Healy occasionally showing by signs and sometimes saying, " Hurry up," as well as some other things which the plaintiff did not understand ; that sometimes he could not get the rubber off the cylinders, and Healy would come over and cut it off for him ; that during the time he worked on the machine he saw Healy do nothing to his own machine, and no one showed him the screw on the machine for adjusting the cylinders, nor did he see the screws or know their use ; that he did not know how far apart the cylinders were or that their position could be changed ; and that he worked on his machine the same way all the time until he was injured. The plaintiff further testified, that on the day of the accident he came back from his dinner four or five minutes late, and Healy, with an oath, told him to " hurry up " ; that he hurried, took off his coat, and hastened to his work ; that he took two pieces of rubber, put them between the cylinders, and they fell down ; that he turned and looked toward Healy, who laughed ; that theretofore he had used other pieces of rubber of the same size, which had never fallen through or gone through so quickly ;

that these pieces of rubber did not cling to the cylinders as others had done in the morning, but went through quickly and fell into the tray under the cylinders; that Healy said nothing, and made no motion for him to stop; that he put them in again side by side, and tried to hold them pressed together with his hands, but did not press down on them; that he did just the same as he had done before, and as he had seen Healy do; and that as he put the pieces on the cylinders the second time they again fell through quickly, and his hands and arms were drawn into the machine and injured. On cross-examination he admitted that when he went to work upon the machine he knew that, if he put his fingers between the cylinders, they would be cut or broken; and that he did not understand why the rubber fell through the first time, but that he looked to Healy, who laughed.

The defendant's evidence tended to show that on Monday the plaintiff worked on the same machine with Healy, and under his supervision; that he was instructed fully as to the management of the machine, including the use of the screws, not only by language and motions, but by the guiding of his hands; and that he was frequently warned by Healy and others, by words and motions, such as pulling away his hands from near the centre of the machine when they were carried there in his efforts to cut the rubber off the cylinder, and there was evidence that he understood the language used. Another Armenian employed in the factory testified, without contradiction, that he told the plaintiff that the machine was dangerous, and that he must be very careful. The defendant's evidence further tended to show that, after the first few trials, the plaintiff, on Monday and up to the time of the accident on Tuesday, did his work well, and without difficulty, although at times he was reckless, and, when warned, he thought he ought not to be spoken to; that when he began grinding at half past eleven on Tuesday, he opened the cylinders slightly, but soon restored them to their original position, where they remained when he left them at noon; and that during the noon hour one Boland, in the regular performance of his duty, opened the cylinders for the purpose of oiling the threads of the screw, after which he readjusted them.

Boland testified that he oiled the plaintiff's machine at about one o'clock, and that he told the plaintiff, who did not appear to

understand what he said, to keep his hands off the machine, and that he then pulled the plaintiff away from it by the shoulder about two minutes before he was injured, and when the plaintiff was putting two medium-sized pieces of rubber into the machine, and that he then went away, and did not see the accident. On cross-examination he testified that the plaintiff did not speak to him, and that Healy, who was working on the next machine, did not look when the witness pulled the plaintiff away from the machine; that, as he left, he said to Healy, "It makes me nervous to see a man act like that," to which Healy made no reply; and that he saw that the plaintiff needed instruction which the witness tried to give him, and that he knew that the plaintiff was under Healy's charge and direction.

Healy testified that he saw the plaintiff from the time he came in at noon on Tuesday until he was injured; that the plaintiff threw a big lump on, which bit a little and jumped out into the alley; that the plaintiff threw it in again carelessly, and it jumped out again; that the plaintiff then took a small piece in his hand and made a dart, as if he were vexed " and wanted to shove it in with terrible force"; that the piece jumped up on the box over the small gears, the plaintiff's left hand went down and he put his right hand after it, and both were caught; that when the piece jumped out the second time the witness put his hand up to the plaintiff to prevent him from going near it until the witness got to him; that as he jumped for the screw to open the cylinders after the plaintiff was caught he noticed that the screw was about three threads out of adjustment, and he testified that the effect of leaving the cylinders thus wider apart than usual would be that the rubber would go through very quickly, and would indicate to his mind that the cylinders were too far apart; and that he, or any experienced man, or one who had been taught, would at once screw them up.

The plaintiff, in rebuttal, testified that he had never seen the "hoe" used for the purpose of pressing the rubber into the cylinders, or been instructed so to use it, and that, in showing him how to do the work, his teacher had held the rubber with his hands in position to catch between the cylinders. He further testified that neither Boland nor any one else had pulled him away from the machine, and that he did not remember hav-

ing seen Boland previous to the trial. There was no evidence that the plaintiff's machine was touched by any one during the dinner hour except Boland.

At the close of the evidence, the defendant requested the judge to rule that there was no evidence to warrant a verdict for the plaintiff ; but the judge declined so to rule, and submitted the case to the jury, who returned a verdict for the plaintiff, and the judge reserved the case and reported it for the consideration of this court. If the ruling was right, judgment, by consent of the parties, was to be entered on the verdict ; otherwise, judgment was to be entered for the defendant.

The case was argued at the bar in March, 1895, and afterwards was submitted on the briefs to all the judges. ·

*C. K. Cobb,* for the defendant.

*S. L. Whipple,* ( *W. R. Sears* with him,) for the plaintiff.

BARKER, J. Upon the report, the question is whether the jury could find that some breach of the defendant's duty to the plaintiff caused his hurt, and that he was himself using due care.

1. The fault of the workman who after oiling the machine neglected to readjust its cylinders cannot be imputed to the defendant. The oiling of the machine was one of the daily matters, regularly incident to its ordinary use, which must be intrusted to servants ; and in such cases, if a competent servant is selected, his negligence on a single occasion cannot be imputed to the master. *Johnson* v. *Boston Tow-Boat Co.* 135 Mass. 209. *McGee* v. *Boston Cordage Co.* 139 Mass. 445. *Moynihan · v. Hills Co.* 146 Mass. 586. *Ryalls* v. *Mechanics' Mills,* 150 Mass. 190, 195.

2. A majority of the court are of opinion that there was evidence of a breach of the defendant's duty to give instruction and warning. The jury may have found that the plaintiff's state of pupilage as to his work had not ended, and that Healy was yet charged with the duty of instructing him how to use the machine safely and properly ; that the plaintiff's experience with the machine had been so very brief that he was chargeable with no more knowledge of it than he actually had ; that he did not know that the cylinders were or could be out of adjustment; that he knew of no way of feeding the material but by the use of his hands ; that the sudden falling through of the two pieces of rubber gave him no actual knowledge that the machine was

not in a condition for use; and that when the pieces so fell he turned for advice to Healy, and that Healy's laugh was in effect a direction to go on as before. If, as the jury might find, the quick falling through of the rubber would at once show an experienced workman that the cylinders were too far apart, it was the duty of Healy, if he still had the plaintiff in charge, and if he understood when the pieces first fell through that he was applied to by the plaintiff for instructions, to warn him against attempting to feed the pieces again until the cylinders had been readjusted; and an omission so to do would be imputable to the defendant, on whom rested whatever duty there was to give the plaintiff warning. For this purpose, Healy represented the defendant; and if the defendant was found, through Healy, to have known that a need of warning had arisen, there was a duty to give it, although the danger came from the fault of a fellow servant, and although, as held in *Siddall* v. *Pacific Mills*, 162 Mass. 378, 382, the employer is not ordinarily called upon to warn against dangers which can only result from the fault of fellow servants. The plaintiff was an adult; and, as stated in *Stuart* v. *West End Street Railway*, 163 Mass. 391, the doctrine that it is the duty of an employer to give instructions to one about to work on dangerous machinery when there are dangers which the employer knows or ought to know and which he has reason to believe his employee does not know, and will not discover in time to protect himself from injury, is to be applied in favor of adults with great caution; and the employer is not required to give warning where the elements of the danger are so obvious to a careful person of average intelligence that ordinary prudence should make him avoid them without warning. While in the present instance many of the elements of the danger were obvious, the circumstance that the cylinders were much too far apart was not, owing to their position, obvious; and it was this circumstance which very much increased the danger to the plaintiff in feeding his machine in the usual manner. If the plaintiff by looking at Healy when the pieces of rubber fell through asked for instruction, he should have been warned not to repeat the operation of feeding them with his hands until the cylinders had been readjusted.

3. A majority of the court are also of opinion that the question whether the plaintiff was guilty of negligence, in attempting

again to feed with his hands the pieces which had just fallen through, was for the jury. Of course, no man of ordinary intelligence, with a day's experience in operating the machine, could contend that he did not know that if his hands were so placed between the upper portions of the revolving cylinders as to come in contact with their surfaces, there was obvious danger that his arms would be drawn in. The plaintiff admitted that he knew that, if he put his fingers between the cylinders, they would be cut or broken, and there was uncontradicted evidence that he had been told that the machine was dangerous, and that he must be very careful. And besides this, the sudden falling through of the pieces of rubber when first fed was enough to make it his duty to inquire of himself or of his instructor whether he ought to feed them in the same way again. But the machine as then out of adjustment was very much more dangerous than usual. The jury may have found that the plaintiff was then for the first time confronted with this increased danger, and that he did not know to what the unusual course of things was due, nor what he ought under such circumstances to do. If, without asking for advice, he had again placed the pieces of rubber in the machine with his hands, he might have been said to be at fault, although that was the usual way of feeding, and the only way in which he had been instructed. If he was yet a pupil, ordinary care required that he should not repeat such an operation without asking for instructions. The plaintiff's testimony, however, justified a finding that, upon the first indication of the increased danger, he did in fact by a look appeal to Healy for advice, and got merely a laugh in reply, and the jury may have found that in this way the plaintiff did in effect inquire of Healy what he ought to do, and was in effect instructed to go on as before. If so, we think it cannot be said, as matter of law, that he was negligent in again attempting to feed the machine in the usual manner. His want of personal experience tended to justify him in following the directions of the man who had him in charge, and his imperfect knowledge of English must be taken into account in determining whether he was at fault in asking advice by a look, and interpreting the answering laugh as a direction to do as before.

*Judgment for the plaintiff on the verdict.*