## THURBER BRICK CO. v. MATTHEWS.
### (No. 8238.)

(Court of Civil Appeals of Texas. Ft. Worth. Oct. 16, 1915. Rehearing Denied Nov. 27, 1915.)

1. APPEAL AND ERROR ⟐748—OBJECTION TO SUFFICIENCY OF ASSIGNMENT — CONSIDERATION.

The appellee's objection to a consideration of appellant's assignment of error as set out on a certain page of appellant's brief, because it violated certain rules of court, not pointing out in what respect any one or more of such rules was violated, would not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3058–3064; Dec. Dig. ⟐ 748.]

2. APPEAL AND ERROR ⟐730—ASSIGNMENT OF ERROR—SUFFICIENCY—RULES OF COURT.

An assignment of error in that the court erred in refusing to give the defendant's charge instructing the jury to find for it as per bill of exceptions No. 1, did not violate Rules for Courts of Civil Appeals 24, 25, 30, 31 (142 S. W. xiii), prescribing the requisites of assignments of error and briefing thereof.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3013–3016; Dec. Dig. ⟐ 730.]

3. MASTER AND SERVANT ⟐228—INJURY TO SERVANT—NEGLIGENCE OF FELLOW SERVANT—WHAT LAW GOVERNS.

Where an injury to a servant occurred in January, 1913, prior to the enactment of Vernon's Sayles' Ann. Civ. St. 1914, art. 5246h, effective September 1, 1913, the common-law rule as to liability for the negligence of fellow servant governs.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 670, 671; Dec. Dig. ⟐ 228.]

4. MASTER AND SERVANT ⟐216—ASSUMPTION OF RISK—NEGLIGENCE OF FELLOW SERVANT.

At common law a servant assumes the risk of injury resulting from the negligence of a fellow servant, and cannot recover of the master therefor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 567–573; Dec. Dig. ⟐ 216.]

5. MASTER AND SERVANT ⟐101, 102 — MASTER'S DUTY—SAFE PLACE TO WORK.

At common law a master owes to the servant the duty to exercise ordinary care to furnish a reasonably safe place to work, and safe tools and appliances.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. ⟐101, 102.]

6. MASTER AND SERVANT ⟐187—MASTER'S DUTY—SAFE PLACE TO WORK—DELEGATION.

A master who delegates the performance of his duty to provide a servant with a safe place to work, so that another servant is injured as a result of negligence in the performance of that duty, cannot, at common law, invoke the fellow-servant rule to escape liability.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 422–426; Dec. Dig. ⟐ 187.]

7. MASTER AND SERVANT ⟐187 — FELLOW SERVANTS—VICE PRINCIPAL.

A master cannot invoke the fellow-servant rule to escape liability for negligence of his servant who occupies the relation of vice principal toward an injured servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 422–426; Dec. Dig. ⟐ 187.]

8. MASTER AND SERVANT ⟐185—SAFE PLACE TO WORK—MASTER'S LIABILITY.

A master who has furnished a reasonably safe place to work and reasonably safe appliances cannot be held liable to a servant whose fellow servant has negligently rendered the place or the appliances unsafe, without the master's fault or knowledge.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. ⟐ 185.]

9. MASTER AND SERVANT ⟐101, 102—SAFE APPLIANCES—TEMPORARY DANGERS.

The master's absolute obligation to see that due care is used to provide safe appliances for his servants is not extended to all passing risks arising from short-lived causes.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. ⟐101, 102.]

10. MASTER AND SERVANT ⟐185—SAFE APPLIANCES—MANNER OF USE—MASTER'S LIABILITY.

Where an appliance is reasonably safe and its operation necessarily rests upon the care and intelligence of the fellow servants of the person injured, the master will not be held liable for an accident due to the manner in which the appliance is operated by a fellow servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. ⟐ 185.]

11. MASTER AND SERVANT ⟐190—MASTER'S LIABILITY—FELLOW SERVANT.

In an action by the employé of a brick company for injury from stepping into an opening in the floor of a tram car, where it appeared that the one who had oiled the trucks of the car and had not put back part of the floor had no authority to employ or discharge plaintiff, and was not the foreman over plaintiff's work, or intrusted with superintending or directing it, the negligence was not that of a vice principal, but of a fellow servant in the performance of a mere incidental duty, so that plaintiff could not recover.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. ⟐ 190.]

12. MASTER AND SERVANT ⟐188 — FELLOW SERVANTS.

A servant may serve in a dual capacity of vice principal and fellow servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 436; Dec. Dig. ⟐188.]

13. MASTER AND SERVANT ⟐291—ACTION FOR INJURIES—SUBMISSION OF ISSUES—QUESTION OF EVIDENCE.

In a servant's action for personal injury from stepping into an opening in the floor of a tram car, the refusal of defendant's request to submit whether it was a universal custom for plaintiff and the other servants to ride on the tram car to and from their work was not error, where the question was merely one of evidence, bearing upon the issues submitted and determined as to whether plaintiff was in the discharge of his duties at the time of his injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1133, 1134, 1136–1146; Dec. Dig. ⟐291.]

Appeal from District Court, Erath County; W. J. Oxford, Judge.

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by A. H. Matthews against the Thurber Brick Company. Judgment for plaintiff, and defendant appeals. Reversed, and judgment rendered for defendant.

John W. Wray, of Ft. Worth, for appellant. Chandler & Pannill, of Stephenville, and McLean, Scott & McLean and Leonard M. Levy, all of Ft. Worth, for appellee.

DUNKLIN, J. A. H. Matthews, an employé of the Thurber Brick Company, while riding on a tram car, stepped into an opening in the floor of the car, and in consequence thereof sustained serious injuries to his foot and ankle. This suit was instituted by him against the company for damages resulting from that injury, and from a judgment in his favor the defendant has appealed.

The defendant was engaged in the manufacture of brick, and the duties of Matthews' employment were to assist in transferring the brick from what were termed "driers" or "stubs" to the kilns where they were burned. The driers were situated about 50 or 60 yards from the kilns, and the bricks were taken from the driers, loaded onto the tram car, upon which they were carried to the kilns. The particular duties for which Matthews was employed were to take the brick from the driers and load them onto the tram car in the first instance, and to unload them from the car into the kilns. The tram car was some 15 or 20 feet long, about 6 feet wide, running on rails, and operated by an electric motor. The car was supported by large trucks near each end, and by what were termed "blind trucks" in the middle. The latter were called blind trucks because they were obscured from view by the floor of the car above them and by boards on the outside. It was customary to oil these blind trucks; and, in order to do so, it was necessary to remove one or more of the boards just above them, and constituting a part of the floor of the car. It was customary to oil these trucks every day, and according to some of the witnesses two or three times a day. After they were oiled the board or boards which had been removed from the floor of the car were replaced. It was the duty of Bob Lang, another employé of the defendant company, to oil these trucks. Plaintiff's injury occurred about 7 o'clock in the morning, just as he had started to work for the day. On the morning of the accident the board in the floor of the car over the blind trucks had been taken out, and had not been replaced when plaintiff, with other employés, stepped upon the car and started to the driers for the purpose of loading it with brick. While making this trip one of the other employés riding upon the car requested plaintiff to move his position, and in complying with that request plaintiff stepped into the opening which, according to his testimony, he had not previously observed. There

was testimony tending to show that by reason of the early hour of the morning his failure to observe the opening was due to a lack of light, and the jury by their verdict found that he was not guilty of contributory negligence in stepping in the opening.

In plaintiffs' petition that part of the floor of the car which was moved for the purpose of oiling the blind trucks is designated as the door, and the allegations of negligence upon which the suit was based were as follows:

"Defendant owed plaintiff the duty to use ordinary care in providing him with a reasonably safe place to work and perform his duties for defendant, and to exercise a like degree of care to maintain the same in a reasonably safe condition; that said door in the floor of said car constituted a part of the floor of said car, and was one of the places furnished by defendant for plaintiff to carry on his work; that the failure of defendant to keep said door closed, especially when it was too dark for plaintiff and other employés to see when it was open, and the leaving of said opening in the floor of said car, was negligence upon the part of defendant, and was a direct and proximate cause of plaintiff's injuries, as aforesaid; that in failing to use ordinary care to provide against said door being left open, defendant was guilty of negligence in thereby failing to use ordinary care to furnish plaintiff with a reasonably safe place to labor.

"Plaintiff alleges that Bob Lang, the foreman of defendant, under whom plaintiff worked for defendant, was charged with the duty of using said door in oiling the machinery of said car, and it was the duty of said Bob Lang, foreman, to close said door after using the same for the purposes aforesaid, and it was said Bob Lang, foreman, who left said door open on the occasion when plaintiff was injured, and said foreman's negligence in so doing was the negligence of defendant, and said negligence of defendant and said Lang was the direct and proximate cause of plaintiff's injuries, as aforesaid, and that said foreman was reckless and incompetent and unfit, which incompetence and unfitness was well known to defendant, and was not known to plaintiff."

The verdict of the jury was upon special issues. In addition to a finding that plaintiff was injured in the manner related above, they made further findings as follows: That the motor car had been furnished by the defendant to the plaintiff and its other employés for their use in going from one part of the premises to another in performing the duties of their employment, and that at the time of the accident it was in line with plaintiff's duties to be upon the car; that the defendant had intrusted the duty of oiling the car to "Foreman Bob Lang," who, prior to the accident, for the purpose of oiling the blind truck, had removed the boards in the floor of the car immediately above the trucks and had not replaced them; that his failure to replace the same constituted negligence which was the proximate cause of plaintiff's injury; and that the car with said opening in the floor thereof was not a reasonably safe place for plaintiff to work.

Thus it will be seen that the recovery was based solely upon the negligence of Bob Lang in failing to replace the boards after he had

oiled the blind trucks. In this connection it is proper to note that the record contains no evidence to support the allegation contained in the petition that Bob Lang "was reckless and incompetent and unfit, which incompetence and unfitness was well known to the defendant," and that that issue was not submitted to nor passed upon by the jury.

[1, 2] Appellant's first assignment of error reads:

"The court erred in refusing to give defendant's charge instructing the jury to find for it as per bill of exceptions No. 1."

Bill of exception No. 1 is copied in the brief following the assignment, and presents in different forms the proposition that the negligence of Bob Lang in failing to close the opening in the floor of the tram car after oiling the blind trucks was the negligence of plaintiff's fellow servant for which the defendant is not liable. The same contention in different forms is presented by different propositions submitted under the assignment. In appellee's brief an objection is made to the sufficiency of the assignment in the following language:

"Appellee objects to a consideration of appellant's first assignment of error as set out on page 2 of appellant's brief, for the reason that the same is in violation of rules 24, 25, 30, and 31 of the rules for the Courts of Civil Appeals (142 S. W. xii, xiii)."

In what respect any one or more of those rules is or are violated by the assignment is not pointed out, and for that reason we would be justified in declining to consider the objection. Furthermore, we fail to discover in the assignment any infraction of those rules. See, also, rule 101a (159 S. W. xi).

It will be noted that the jury found Bob Lang to be "foreman," but failed to find whether or not he was foreman of the work, a part of which plaintiff was performing at the time of his injury. Plaintiff testified as follows:

"Bob Lang was foreman over the kiln firing and the miscellaneous gang. He hired men on the firing gang and miscellaneous gang—he was head boss over the firing men, and just say that it was done. Q. What did he do, if anything, if you know, with reference to discharging men? A. He fired Troy Whittendon and John Waldon. A fellow by the name of Kelley employed me. * * * Q. I understood you to say this man Lang was foreman of the miscellaneous gang. What was the miscellaneous gang? A. The roustabout gang, clean-up gang. They helped the brick pavers and cleaned up around there. Lang was foreman of the brick burners. Mr. Burke was my immediate foreman at the time."

This testimony of the plaintiff was uncontradicted. Furthermore, the evidence shows without contradiction that it was Bob Lang's duty himself to oil the blind trucks, just as was alleged by the plaintiff in his petition. Bob Lang did not testify upon the trial, and no witness testified definitely just how long the opening had existed prior to the accident. Neither did the jury return any finding relative to that question. But the evidence tends strongly to show that Bob Lang oiled the trucks on the morning that the accident happened very shortly prior to the time plaintiff stepped upon the car, and failed to replace the boards upon that occasion. We are cited to no evidence, and have found none in our investigation of the record, which in any manner tended to show that the opening had been left in the floor prior to the morning of the accident, or that Lang was in the habit of leaving the same open after oiling the trucks, or that any other employé of the defendant knew of the existence of the opening prior to the time plaintiff stepped upon the car on the morning he was injured, nor was it proven that Bob Lang was incompetent to perform the duties intrusted to him, nor was there allegation or proof of any defect in the construction or repair of the car.

[3] The accident happened on January 1, 1913, prior to the enactment of article 5246h, 3 Vernon's Sayles' Texas Civil Statutes, which did not take effect until September 1, 1913. See Acts of Legislature 1913, p. 429. Hence the common-law rule relating to the negligence of a fellow servant is applicable, and must govern in the determination of the merits of the assignment now under discussion.

[4] It is a familiar common-law rule that the servant assumes the risk of injury resulting from the negligence of a fellow servant, and cannot recover of the master therefor.

[5, 6] It is also a familiar rule of common law that the master owes to the servant the duty to exercise ordinary care to furnish the servant a reasonably safe place to work and safe tools and implements with which to work, and that when he has delegated the performance of this duty to a servant, and another servant is injured as a result of negligence in the performance of that duty, the master cannot invoke the fellow-servant rule in order to escape liability. As an expression of this rule this duty is frequently referred to in the authorities as a nondelegable duty.

[7] Another rule at common law is that the master cannot invoke the fellow-servant rule to escape liability for negligence of his servant who occupies the relation towards the injured servant of vice principal.

The case of S. W. Tel. & Tel. Co. v. Sanders, reported in 173 S. W. 865, was a suit in which Sanders, an employé of that company, was injured by an electric shock which he received through a current passing from an electric wire to Sanders' body through the medium of a wet rope with which plaintiff was working. The theory upon which a recovery was sought was that the master was guilty of negligence in failing to furnish the servant a safe appliance with which to work. In disposing of that case our

Supreme Court, after referring to the fact that the rope was perfectly dry when it was furnished by the master, and that its wet condition was due solely to the subsequent act of Sanders and his fellow servants in dragging it upon the wet ground, and of which wet condition the master had no knowledge, held that the trial court erred in submitting to the jury the issue of negligence alleged as the basis for recovery. In that connection the court used the following language:

"It is equally clear that the submission of the issue of the company having furnished Sanders with a wet rope was erroneous; there being no evidence that it had done so. It is the duty of a master to use ordinary care to provide the servant with reasonably safe tools and appliances for the work in which he is engaged, and to use like care to keep them in repair. But it would be the announcement of a manifestly harsh and unjust rule to say that, where he has furnished his employé with a safe appliance, in a safe condition when furnished, he is nevertheless liable for a defective condition, though produced solely by an act of the employé or others, for which he is not responsible and of which he had no knowledge, and which condition he had no opportunity to remedy."

The case of Judson & Little v. Tucker, 156 S. W. 225, by this court, was one in which a servant was injured while loading a toolhouse upon a wagon to be moved. While that work was in progress the foreman in charge of the work handed the plaintiff a prop to place under and support the house to keep it from falling. The house fell and injured the plaintiff as a result of the breaking of this prop, which was too weak to support the weight imposed upon it. One of the theories upon which a recovery was sought was that the foreman in charge of the work was the vice principal of the master, and that the rule of law requiring the master to exercise ordinary care to furnish the servant a safe place to work and safe instrumentalities with which to perform his work had been violated, in that the foreman who furnished the insufficient prop for the house was guilty of negligence which was the proximate cause of the injury. This court overruled that contention, and in so doing Chief Justice Conner said:

"There is no evidence showing that Myers had the power to employ or discharge, and hence, under the ruling of our Supreme Court in the recent case of Lantry-Sharpe Contracting Co. v. McCracken [105 Tex. 407], 150 S. W. 1156, it must now be conceded that he did not occupy such relation toward appellants. He, therefore, was but a fellow servant with appellee, and the further important question for our determination is: Was Myers in the performance of the acts submitted by the court as grounds of recovery discharging primary or nonassignable duties of his master? If he was, as stated and as appellee insists, appellants are liable for his negligence. The general duty of appellants was to exercise due care to adopt a reasonably safe method, and to provide suitable conveyance and means for the accomplishment of the general object to be attained, which was the removal of the toolhouse. But mere details in the performance of the work could legally be committed to the servants. To adopt any other rule would require the master's personal presence and supervision throughout all work undertaken, and the law imposes no such burden."

See, also, Leonard Cotton Oil Co. v. Burnes, 138 S. W. 1082; Producers' Oil Co. v. Bush, 155 S. W. 1032, loc. cit. par. 3, p. 1038; Chandler v. St. Joseph Lead Co. (Mo. App.) 178 S. W. 217.

[8-10] The following announcements of the law found in 4 Labatt's Master and Servant are supported by seemingly an unbroken line of authorities, a great number of which are cited by the author:

"All the authorities are agreed as to the general proposition that a master, who has furnished a reasonably safe place to work in, and reasonably safe appliances to work with, cannot be held liable to a servant whose coservant has, by his negligence, rendered that place or those appliances unsafe, without the master's fault or knowledge." Section 1515.

"A form of expression which is often met with in recent cases, particularly in Massachusetts, is that there can be no recovery where the danger to which the plaintiff was exposed was merely a transitory one, existing only on the single occasion when the injury was sustained, and due to no fault of plan or construction, or lack of repair, and to no permanent defect or want of safety in the defendant's works, or in the manner in which they had been ordinarily used. Or, as the rule has also been enunciated, 'the absolute obligation of an employer to see that due care is used to provide safe appliances for his workmen is not extended to all the passing risks which arise from short-lived causes.'" Section 1517.

"Another ground of distinction adverted to by the courts is based upon the theory that the master, while responsible for intrinsic defects in the instrumentalities, which would not have existed if the servants intrusted with the functions of supplying or maintaining them had exercised proper care, cannot be held liable for injuries caused by the manner in which the servants use those instrumentalities for the performance of their work. That is to say, the master is deemed to have performed his whole duty, where he has supplied an instrumentality which is reasonably safe if it is carefully used by the fellow servants of the injured person. Or, in other words, where an appliance is reasonably safe to operate, and its operation necessarily rests upon the care, intelligence, and fidelity of the fellow servants of the person injured, the master will not be held responsible for an accident, the nature of which indicates that it must have been due to the manner in which the appliance was operated by one of those workmen." Section 1520.

The same rule is announced by the Supreme Court of Indiana in Indianapolis T. & T. Co. v. Mathews, reported in 177 Ind. 88, 97 N. E. 330, in the following language:

"While an employer is bound to exercise ordinary care to furnish an employé a safe place in which to work and to exercise ordinary care to keep it in that condition, he is not liable to his employé for the negligence of his coemployés in respect to the details of the work, nor is he bound to protect his employé against the mere transitory perils that the execution of the work occasions, nor is he liable merely because a fellow employé negligently handles or uses appliances or tools, or negligently fails to use them, or negligently operates machinery or a car, or cars, in such a way as to occasion injury to another employé" (citing numerous decisions in support of that announcement).

In So. Ind. R. Co. v. Harrell, 161 Ind. 689, 68 N. E. 262, 63 L. R. A. 460, the Supreme Court of Indiana uses the following language:

"One of the leading duties of a master, except in instances when it can be said that the complaining servant has assumed the particular risk, is to use ordinary care to keep the place where such servant is employed in as safe a condition as the nature of the employment fairly admits of. To make the above statement certain requires a consideration of the meaning of the word 'place.' If by this it is meant that the master, by himself or representative, must be always present to ward off every transient peril that may menace the servant in the particular spot or place that he may chance to occupy while engaged in the performance of his work, then it must be affirmed that the rule of law instances it would be wholly impracticable to discharge. A railroad company could scarcely employ vice principals enough to make it sufficiently Argus-eyed to guard its servants to that extent."

In Bjbjian v. Woonsocket Rubber Co., reported in 164 Mass. 214, 41 N. E. 265, the Supreme Court of Massachusetts said:

"The fault of the workman who, after oiling the machine, neglected to readjust its cylinders cannot be imputed to the defendant. The oiling of the machine was one of the daily matters, regularly incident to its ordinary use, which must be intrusted to servants; and in such cases, if a competent servant is selected, his negligence on a single occasion cannot be imputed to the master. Johnson v. Boat Co., 135 Mass. 209 [46 Am. Rep. 458]; McGee v. Cordage Co., 139 Mass. 445, 1 N. E. 745; Moynihan v. Hills Co., 146 Mass. 586, 16 N. E. 574 [4 Am. St. Rep. 348]; Ryalls v. Mills, 150 Mass. 190, 195, 22 N. E. 766 [5 L. R. A. 667]."

To the same effect is the decision of the Supreme Court of Massachusetts in Wosbigian v. Washburn & M. Mfg. Co., reported in 167 Mass. 20, 44 N. E. 1058.

[11, 12] Unquestionably, in performing the service of oiling the blind trucks of the tram car in controversy in the present suit, Bob Lang was a fellow servant with the plaintiff Matthews. I. & G. N. Ry. v. Ryan, 82 Tex. 565, 18 S. W. 219; Dallas v. G., C. & S. F. Ry., 61 Tex. 196; St. L., A. & T. Ry. v. Welch, 72 Tex. 298, 10 S. W. 529, 2 L. R. A. 839; I. & G. N. Ry. v. Still, 40 Tex. Civ. App. 22, 88 S. W. 257. The evidence conclusively negatives the soundness of any contention that the negligence of Bob Lang upon which the recovery was based was the negligence of defendant's vice principal, for which the master should be held liable. According to plaintiff's own testimony, Lang had no authority to employ or discharge him. Nor does it appear that he was even foreman over the work performed by Matthews, nor that he was in any manner intrusted with the duty of superintending or directing the services of Matthews. Although Lang was foreman over the kiln firing and miscellaneous gang, still in oiling the car in controversy he was not acting as such foreman, but was performing a mere incidental duty, the doing of which could, in no sense, be held the service of a

vice principal. It is well settled that a servant may serve in the dual capacity of vice principal and fellow servant. .G., H. & S. A. Ry. v. Smith, 76 Tex. 611, 13 S. W. 562, 18 Am. St. Rep. 78; T. & P. Ry. v. Reeves, 90 Tex. 499, 39 S. W. 564; G., H. & S. A. Ry. v. Geo. L. Farmer, 73 Tex. 85, 11 S. W. 156; Judson & Little v. Tucker, 156 S. W. 228, supra, and authorities there cited; Dantzler v. De Bardeleben Coal & Iron Co., by Supreme Court of Alabama, reported in 101 Ala. 309, 14 South. 10, 22 L. R. A. 361. The quotations from the authorities shown above express so admirably the reasons for the rule announced, and are so plainly applicable to the facts of this case, that any further discussion of either of those questions would be superfluous; and upon those authorities, and others of like import, also cited, appellant's first assignment of error is sustained.

Appellee has cited, among others, the decision of our Supreme Court reported in S. P. Ry. v. Markey, 19 S. W. 392, sustaining a judgment against a railway company in favor of one of its brakemen for defendant's negligence in permitting the presence of an obstruction upon its track over which the brakeman stumbled and was injured while performing one of the duties of his employment. But that case is clearly distinguishable from the authorities cited above in support of our conclusion, in that the duty to exercise ordinary care in furnishing the brakeman a safe track was a nondelegable duty. And it could make no difference that the evidence in that case indicated that section hands in repairing a bridge had negligently left the obstruction upon the track, since to make the track safe was the sole purpose of their employment.

The case of St. L. & S. F. Ry. v. Ames, 94 S. W. 1112, also cited by appellee, is likewise distinguishable from the present suit and the foregoing authorities, in that the negligence which supported the recovery consisted in the failure of the Railway Company to furnish Ames, its brakeman, a safe track, and in failing to promulgate certain rules for the conduct of its business which would have avoided the accident. Clearly, both of those duties were nondelegable.

Another decision cited by appellee is B. & O. Ry. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772. That was a suit by a fireman of a locomotive to recover for personal injuries sustained as the result of negligence of the engineer of the same locomotive in so operating it as to cause a collision with another train, and it was held that the engineer was a fellow servant of the fireman. Neither in that ruling nor in the accompanying general discussion of the law of master and servant do we discover any announcement at variance with our conclusions expressed above.

We deem it unnecessary to discuss other authorities cited by appellee in support of

propositions, substantially, that after a master in the first instance has furnished to the servant safe instrumentalities with which to work and a safe place to work, he owes the continuing duty to exercise ordinary care to maintain the same in such condition, since we do not controvert the soundness of that contention, nor the authorities cited; our conclusion being that the same have no application to the controlling facts in the present suit.

[13] There was no error in the court's refusal of defendant's request to submit, as a special issue for the jury's determination, whether or not it was "a universal custom for the men in defendant's employ and the plaintiff, to ride the train to and from their work." Appellant's contention is that a determination of that issue in the affirmative would have fixed plaintiff's legal status while on the car at the time he was injured as that of a licensee only and not an employé, and that if such was his relation to the defendant, he showed no ground for recovery. At best the question propounded was one of evidence only, bearing upon the issue submitted and determined, in effect, that plaintiff was in the discharge of one of the duties of his employment in riding on the car at the time of his injury.

Substantially all questions presented by other assignments have been determined in the foregoing conclusions.

For the error in refusing defendant's request for a peremptory instruction in its favor, the judgment of the trial court is reversed, and judgment is here rendered in favor of appellant.