## Edward Hines Lumber Co. v. Frank Ligas, for use, etc.

1. MASTER AND SERVANT—*Duty of Master to Protect Servant from Injury.*—A master is bound to the exercise of reasonable care with reference to all the appliances of his business, and is bound to protect his servants from injury therefrom by reason of latent or unseen defects so far as such care can do so; but the master does not insure his servant against injury, and is only chargeable for damage happening to his servant from defective appliances, when negligence can be properly imputed to him.

2. SAME—*Care to Avoid Injury Required of Servant.*—A servant is bound to see for himself such risks and hazards as are patent to observation, and is bound to exercise in the discovery of risks and hazards such opportunities for observation, skill and judgment as he possesses.

3. SAME—*Right of Servant to Presume that Master has Done his Duty.*—When the danger from a defective appliance is not patent, the servant has a right to presume that the master has discharged his duty, and that the appliances of the business are reasonably safe and free from hazard.

4. SAME—*Who are Fellow-Servants.*—In order to constitute the relation of fellow-servants between employes of a common master, their duties must be such as to bring them into habitual association, so that they may exercise a mutual influence upon each other, promotive of proper caution.

5. SAME—*The Duty to Furnish Safe Appliances a Personal Duty.*—The duty of the master to exercise reasonable care that the machinery, appliances and place to work which he supplies to his servants are reasonably safe, is a personal one, and he can not, by delegating it to another, absolve himself from liability for its non-performance.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed, January 21, 1897.

### STATEMENT OF THE CASE.

For some time prior to and during the month of January, 1894, appellant was engaged in the wholesale and retail lumber business, and owned and operated extensive yards at the city of Chicago. In the conduct of that business appellant employed from two hundred to three hundred men in winter, and about five hundred men in summer. These

men were employed as laborers in and about appellant's yards, and were engaged in loading and unloading lumber from ships, cars and wagons, and in carting, piling and sorting lumber, and generally doing such work as was necessary to be done in the conduct of such a business.

Appellee entered appellant's employment in May, 1893, and continued therein until the latter part of January, 1894. During that time he was engaged as a laborer, doing generally whatever was to be done about the yards.

There were at appellant's yards about forty million feet of lumber, piled in piles containing from thirty thousand feet to eighty thousand feet each. Some of this lumber was piled by machinery, and some of it was piled by hand.

The course of proceeding was such that when lumber was being piled, boards or pieces of the lumber composing the pile were left either loose, so that they could be shoved out, or projecting from the side of the pile at certain distances from the ground, these boards or timbers being intended as supports for a platform or scaffold to be used in taking lumber from the pile.

When lumber is to be taken from a pile which is high enough to make the use of a scaffold necessary, one man goes on top of the pile and one on the scaffold. The scaffold man arranges the scaffold so that he can stand on it in handling the lumber which is passed down to him by the man on top of the pile. This is done by shoving out the supports, if they are not already shoved out, and placing across them two or three platform boards.

During the time appellee was in appellant's employ he worked a great deal as a scaffold man, but it does not appear that he had ever worked at piling lumber, and he testified that he had not.

On January 30, 1894, appellee was directed to assist another of the laborers in appellant's employ, in taking some lumber from a pile composed of boards one inch thick, twelve inches wide and sixteen feet long. Appellee climbed up the side of the pile and stepped upon one of the support boards, which at the time was projecting from the side of the pile. The board broke and appellee fell to the ground,

a distance of about fifteen feet, and received injuries, to recover for which he thereafter brought this action.

The declaration contains four counts, in each of which it is averred that appellant was in the possession of certain piles of lumber, upon one side of each of which appellant had caused to be constructed, at the height of twenty feet from the ground, a platform or scaffold three feet wide and fourteen feet long, to be used by appellant's employes to stand and be upon in handling lumber in and about said piles; that it was the duty of appellant to keep said platform strong, safe and secure, so that its employes would not be injured when on the same for the purpose aforesaid, and to furnish its employes a safe place to work; that appellant carelessly and negligently permitted said platform " to be old, rotten, weak, unsafe, insecure, dangerous and unfit for the purpose for which it was intended and used;" that appellee was then in the employ of appellant as a laborer, " whose duty it was to handle lumber of said defendant" (appellant); that appellant ordered appellee to go upon said platform and handle lumber; that appellee, not knowing of the insecurity of said platform, and without any fault or negligence on his part, and without any knowledge or reasonable means of knowledge on the part of appellee, of the insecure condition of said scaffold, in obedience to said order, went upon said platform, whereupon, without any fault or negligence on the part of appellee, but by and through the negligence of appellant, said platform broke and gave way and precipitated appellee upon the ground, whereby he was injured, etc.

To this declaration appellant filed a plea of general denial, and upon the issue thus formed the cause was tried before a court and jury, and resulted in a verdict for appellee for $6,000.

Appellant moved for a new trial, whereupon the court suggested that appellee remit the sum of $2,000 from the verdict returned by the jury, which appellee did. Thereupon the court overruled appellant's motion for a new trial, and entered judgment on the verdict for the sum of $4,000. From that judgment this appeal is prosecuted.

As to the circumstances immediately attendant upon the accident, appellee testified :

"The pile of lumber was about thirty feet high; in the middle of the lumber pile there was a scaffold; the foreman from the dock took me there; this scaffold was about fifteen feet from the ground; the pile was thirty feet up to the top; in the middle of the pile there were three boards sticking out to the front; that is, in the middle of the pile from top to bottom; these boards stuck out about three feet; boards were twelve inches wide and one inch thick; one board at one end, and one in the middle, and one at the other end; I did not have anything to do with putting the boards there; the foreman took me there, and told me to go up there on that board; the foreman was John Oehme—that man there; he had been foreman all the time I was there; he gave me my orders, and told me what to do; I was wheeling lumber on hand carts; the foreman came to me and he took me to the pile, and he told me to go up there on that board.

Q. When he went up on that board, what, if anything, did he do with his hands ?  A. He told me and showed it to me; he brought me to that corner, and told me to go up there on that board (indicating and pointing); it was on the 30th day of January, 1894, about ten o'clock in the forenoon, when the foreman told me; I done as he told me to; I went up there on that board, and, as soon as I stepped on the board, the board was broken off and I fell down; I was climbing up on the corner of the pile; everybody climbs up on the pile in this way.

Q. When you got up as high as the board, and stood on it, what part of the board did you step on, with reference to the pile; how near to the pile did you step on the board ?  A. I stepped very close toward the pile; immediately when I stepped on it, it broke right off; it didn't take any time at all; I had never been on that scaffold before. There was nothing on the board except snow; it was covered with snow when I went up there; when the board broke I fell off."

The foreman of whom appellee spoke, having prior to the trial been discharged by appellant, testified for appellee as

" A.  I saw him on the scaffold, yes—told him to go on that scaffold.

Q.  What did he do?  A.  I suppose he went up; I left there, and I was not gone a hundred feet when they called on me that he fell down.

Q.  Then what did you do?  A.  I examined the board that was broken off; I went back there and we got some men there and carried him to the office; I saw on the end of the pile there was a knot inside of the board right across, right in the end of the pile; it was right, of course, inside; the knot was right close to the pile; on the top, where the knot went through, it was kind of rough, but on the bottom you could not see much about the knot at all, it did not go clear through—about an inch or two inches of the board; I guess it went ten inches; the knot was on the east side; on the west side you could not see it at all; it commenced on the east side and ran through the board for about ten inches.

Q.  And did not show at all on the lower side, but was rough on the upper side, so it could be seen that there was a knot there?  A.  Yes, it could be seen on the upper side.

Q.  You may state whather or not that was the board that you had asked this man to go upon?  A.  Yes, sir; I saw it come down; yes.

Q.  That was the same one?  A.  I should think so; yes, sir.

Q.  Were there any boards lengthwise on these three boards that stuck out on that pile at that time?  A.  Yes, there was."

W. B. KEEP, attorney for appellant; MORAN, KRAUS & MAYER, of counsel.

BRANDT & HOFFMAN, attorneys for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

A master is bound to the exercise of reasonable care with

reference to all the appliances of his business, and is bound
to protect his servants from injury therefrom by reason of
latent or unseen defects, so far as such care can do so, but
the master is not an insurer of his servant against injury,
and is only chargeable for damage happening to his servant
from defective appliances when negligence can properly be
imputed to him. The servant is bound to see for himself
such risks and hazards as are patent to observation, and is
bound to exercise, in the discovery of risks and hazards, such
opportunities for observation, skill and judgment as he pos-
sesses; but when the danger from a defective appliance is
not patent, the servant has a right to presume that the
master has discharged his duty, and that the appliances of
the business are reasonably safe and free from hazard.
Wood on Master and Servant, p. 680.

The duty of the master to exercise reasonable care that
the machinery, appliances and place to work which he sup-
plies to the servant are reasonably safe, is a personal one,
and he can not, by delegating it to another, absolve himself
from liability for its non performance. Pullman Palace
Car Co. v. Laack, 143 Ill. 242, 256.

Where a servant is injured by the negligence of a fellow-
servant of the common master, the master is not liable. In
this State in order that one servant should be the fellow-
servant of another, their duties must be such as to bring
them into habitual association, so that they may exercise a
mutual influence upon each other, promotive of proper cau-
tion. Joliet Steel Co. v. Shields, 134 Ill. 209.

As in very many instances, and as regards corporations
in all cases, the master, through the instrumentality of
agents, supplies to the servant machinery, tools and appli-
ances, and provides a place for him to work. Much discussion
has arisen in cases of accidents arising from defective ma-
chinery or appliances, as to whether the agent of the master,
by whom such machinery or appliance was supplied, was
the fellow-servant of the person injured, it being insisted
that if such was the case, the master should not be held
liable. In many instances the court, upon its discussion of

the subject, has come to the conclusion that the agent supplying the machinery or appliance, was not a fellow-servant of the person injured, within the rule by which the relation of fellow-servants is determined.

Our attention has been called to the opinion of the court in Frazier v. Red River Lumber Co., 45 Minn. 235, in which the court say, that in its opinion an important consideration, often overlooked, is whether the structure, appliance or instrument is one which has been furnished for work in which the servants are to be engaged, or whether the furnishing and preparation of it is itself part of the work which they are employed to perform. If it be the latter, then, the court goes on to say, the master is not liable.

There is a certain incongruity in holding that the duty to exercise reasonable care in providing reasonably safe appliances and machinery is a personal one which can not be delegated, and at the same time holding that if the failure to exercise such reasonable care was the neglect of a fellow-servant of the party injured, then the master is not liable; and it seems more correct to say that agents who are charged with the duty of supplying safe machinery and appliances are not, when so doing, in the true sense, to be regarded as fellow-servants of those who are engaged in the use of the same.

This subject has received very intelligent and able consideration in Northern Pacific Ry. Co. v. Herbert, 116 U. S. 642, the conclusion reached being that where the employe is not guilty of contributory negligence, no irresponsibility for the injury to him caused by the defective condition of the machinery and instruments with which he is required to work should be admitted, except it could not have been known or guarded against by proper care and vigilance on the part of his employer.

This subject was also recently carefully considered in Moynihan v. Hills Co., 146 Mass. 586, in which the court said : " In the absence of an express stipulation, the master impliedly agrees to provide and maintain reasonably safe and suitable machinery and appliances, as far as the exercise

of proper care on his part will secure them, and the servant agrees to assume all the ordinary risk of the business, and among them, the risk of injury from negligence of his fellow-servants. This obligation which the master assumes is personal, and appertains to him in his relation to the business as proprietor and in his relation to the servant as master, and it has been repeatedly held that he can not discharge it by delegating a performance of his duty to another,   *   * and if he employs agents or servants to represent him in the performance of this duty, they are, to that extent, agents or servants for whose conduct he is responsible. The very nature of the implied contract created by the hiring, whereby he undertakes to use proper care in always providing safe tools and appliances, is inconsistent with his delegation of the duty to a fellow-servant for whose negligence he is not to be responsible."

In Lewis v. Seifert, 116 Pa. St. 628–647, the court said : " There are some duties which the master owes to his servant, and from which he can not relieve himself except by performance. Thus, the master owes to every employe the duty of providing a reasonably safe place in which to work, and reasonably safe instruments, tools and machinery with which to work. This is a direct personal and absolute obligation, and while the master may delegate these duties to an agent, such agent stands in the place of his principal, and the latter is responsible for the acts of such agent." In Wood on Master and Servant, it is said that in an action like the present, the servant, in order to recover for defects in the appliances of the business, is called upon to establish three propositions :

1st. That the appliance was defective.

2d. That the master had notice thereof, or knowledge, or ought to have had.

3d. That the servant did not know of the defect, and had not means of knowing equal to those of the master. Wood on Master and Servant, Sec. 414; Goldie v. Werner, 151 Ill. 551.

In the present case, the jury has found all of these propositions for appellee.

As to the first, it is clear that the appliance was defective. Did the master have notice thereof?

The defect was one which could have been discovered upon examination with a view to ascertaining whether the board which broke was suitable for the purpose for which it was used.

Was the defect patent? Was it such that appellee, by the exercise of ordinary care for his own safety, in the discharge of his duty to the appellant, would have discovered?

As to this, it must be borne in mind that while the servant must take notice of things that are patent, he is not bound to make an examination for defects, but has a right to act upon the presumption that the master has discharged his duty to exercise reasonable care to see that the appliance is reasonably safe for the use to which it is to be put. Appellee was bound, not only to take notice of what was patent, but to exercise ordinary care for his own safety, while appellant was bound to exercise reasonable care in selecting the materials out of which the scaffold upon which appellee was told to go was constructed.

Upon an examination of the record, we can not say that the jury was wrong in finding, as it did, that the defect in the board which broke was not so patent that appellee should have taken notice of it, or that, when told to make use of the same, appellee failed to exercise ordinary care by not examining the board to see if it was defective. Under the rule that the servant has a right to presume that the master has discharged his duty of exercising reasonable care to see that the appliances supplied are reasonably safe for the use to which they are put, the servant is not bound to look for defects which are not patent to a man of his intelligence, knowledge and experience. Goldie v. Werner, 50 Ill. App. 297.

We can not say that the jury was wrong in refusing to find that the opportunity of appellee for ascertaining the defect in this board was equal to that of the appellant. The board was selected by appellant, put in its place to be used

as a part of the scaffold by his agents, who, when they did this, were not, in so doing, fellow-servants of appellee. Whether the men who constructed this platform were fellow-servants of appellee, as regards matters other than the supplying of machinery, appliances or place to work, is a question which, in this case, we do not think we are called upon to answer. Nor need we discuss what the liability of appellant would have been, had appellee been one of those by whom this scaffold was erected. In such case, it may be that appellee's opportunities for knowing the character of the material entering into the composition of this scaffold, would have been equal to those of appellant, and that thus having notice of the defect, he could not recover for an injury caused thereby. It seems clear that appellee did not assist in constructing this platform, and while it is true, as argued, that in the use thereof it was expected that boards would be laid along upon the projecting boards, one of which broke, we do not see that appellee, being told to climb up, as he did, could, in the first instance, have placed these other boards without, before that, resting his weight upon one of the projecting boards.

The jury was fairly instructed, so that we find in the record no error warranting a reversal of the judgment of the Superior Court, and it is affirmed.