DANIEL E. STUART *vs.* WEST END STREET RAILWAY
COMPANY.

Suffolk.   January 17, 1895. — April 3, 1895.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Personal Injuries — Warning and Instructions as to Use of Dangerous Machine
— Negligence.*

An employee over twenty years of age and of average intelligence cannot recover of his employer for injuries occasioned in the use of a hay-cutting machine operated by horse power, if the elements of danger were obvious, and were such as ordinary prudence ought to have made him avoid without warning or instructions.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ, by the loss of his left hand in a hay-cutting machine operated by horse power.   At the trial in the Superior Court, before *Maynard,* J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions.   The facts appear in the opinion.

*S. Williston,* for the defendant.

*S. L. Whipple,* (*W. R. Sears* with him,) for the plaintiff.

KNOWLTON, J.   The plaintiff was not regularly employed upon the hay-cutter, and it seems very probable that on the day of the accident, when Green, the foreman, sent him to take the

place of one Gilfoye, Green had no thought of his feeding the hay into the machine instead of pitching it upon the table in the rear of the machine, or taking it away after it was cut. Certainly the plaintiff was not told by anybody to feed the hay into the machine, but voluntarily undertook to do it, because, as he says, he supposed that was the part of the work which Gilfoye was expected to do on that day. But the jury might have found that the direction given him was such as to justify him in taking his place at the machine to tend it. We therefore must consider the question whether the defendant was negligent in setting the plaintiff at work without warning him of the danger, and instructing him how to avoid it.

The evidence tends to show that the best device possible for the protection of persons working on the machine was attached to it in the form of a hood extending back two feet and a half from the knives. The evidence was uncontradicted that, since January, 1891, when hoods were placed on the forty-three machines used in the forty-three barns owned by the defendant, no accident has happened in the use of the machines except the accident to the plaintiff. The operation of the machine was simple and obvious to every one of ordinary intelligence; the knives were open to view, and the plaintiff well understood that he would be seriously injured if he allowed his fingers to come in contact with them. They revolved rapidly, and when the hay was passing through them, it was drawn forward with a great deal of force. All this could be seen in a minute by every observer. No one who saw the machine in operation could fail to know that if it was clogged, and if the hay was then loosened with the hand and started forward, it would go with great force as soon as it was brought within the traction of the revolving knives. It was apparent to everybody that it would be very dangerous to permit one's fingers to be caught in a tuft of hay which was about to pass forward between the knives. We see no evidence of any kind of danger which was not open and obvious to every one who saw the machine in operation.

The plaintiff at the time of the accident was twenty years and six months old, and was a "young man of ordinary intelligence and mental quickness." He testified that he had seen the machine work not more than three times before the day of the

accident, and that on one previous occasion he had fed the hay into it for a few minutes.   At that time he asked permission to feed it of the man who was working upon it.   The duty of an employer to give instructions to one about to work on dangerous machinery exists only when there are dangers in the employment of which he has or ought to have knowledge, and which he has reason to believe his employee does not know, and will not discover in time to protect himself from injury.   In the early cases the doctrine was applied in favor of boys.   In favor of adults it should be applied with great caution.   Where the elements of the danger are obvious to a person of average intelligence using due care, it would be unreasonable to require an employer to warn his employee to avoid dangers which ordinary prudence ought to make him avoid without warning. The mere fact that he cannot tell the exact degree of the danger, if the nature and character of it can easily be seen, is not enough to require warning and instruction to a man of full age and average intelligence.   Something may properly be left to the instinct of self-preservation, and to the exercise of the ordinary faculties which every man should use when his safety is known to be involved.   *Russell* v. *Tillotson,* 140 Mass. 201. *Ciriack* v. *Merchants' Woolen Co.* 146 Mass. 182.   *Goodnow* v. *Walpole Emery Mills,* 146 Mass. 261, 267.   *Carey* v. *Boston & Maine Railroad,* 158 Mass. 228, 231.   *Connolly* v. *Eldredge,* 160 Mass. 566.   *Rooney* v. *Sewall & Day Cordage Co.* 161 Mass. 153, 160.   *Wilson* v. *Steel Edge Stamping & Retinning Co., ante,* 315.

In this case it may be that no one could tell the exact degree of the force with which the hay would move forward with the traction of the knives, nor just how great the danger was until he ascertained by actual experiment; but anybody could see at once that there was danger in doing the work unless care was used to avoid letting the fingers be drawn forward to the knives. Any one knowing that there was such danger would be expected to proceed with great caution until he became familiar by experience with the forces with which he had to deal.   We are of opinion that there was no evidence of negligence on the part of the defendant in failing to give the plaintiff instructions, and that therefore the jury should have been directed to return a verdict for the defendant.               *Exceptions sustained.*