PETER MEUNIER *vs.* CHEMICAL PAPER COMPANY.

Hampden.    September 24, 1901. — November 26, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Negligence,* Contributory of employee.

If a workman in a paper mill on the order of a superintendent gets into a space in a machine where he knows that he is in close proximity to revolving rolls, for the purpose of throwing out some paper that has fallen on the floor of the machine, and, stooping, thrusts out his hand at a right angle among the rolls, in order to get it down to pick up the paper, when he might have got his hand down with safety before beginning to stoop, he is not in the exercise of due care.

A workman in a paper mill knew that a certain roll eight inches in diameter, generally not in motion, had been taken out of the machine on which he was working and did not know whether it had been put back or not. On the order of a superintendent he got into a narrow space in the machine, for the purpose of picking up some paper that had fallen. In trying to get his hands down to pick up the paper, he attempted to put one hand on the eight inch roll which if there would not have been in motion. That roll not being in its place, his hand came in contact with another roll which was moving, got caught between the roll and a felt and was injured. *Held,* that he was not in the exercise of due care in acting on the supposition that the missing roll had been put back in the machine, when the slightest inspection would have shown him that it was not there.

TORT for injuries to the plaintiff from having his hand and arm caught between two rolls of a calender paper machine in the mill of the defendant.  Writ dated January 26, 1900.

At the trial in the Superior Court, before *Pierce,* J., the plaintiff gave the following account of the happening of the accident after the direction or remark of Murphy, the superintendent, which is quoted in the opinion of the court: "When Murphy said this to me with reference to throwing out the paper, I did not know whether or not that roll which is shown to the left of this one [the idler] had been replaced on the machine; he came down, and when he told me in that manner, he looked kind of mad, so I went right in and done as he told me; I stepped up on the machine and went right down inside of it; I stepped right here [showing] on that casting; I don't know as there is any name for that, only the side of the machine; I stepped up there and I next stepped the same

distance on the other side to get up there; I was going to step down on the floor inside the machine; I went to put my hand to get down in the machine, because it is a narrow little place, about seven or eight inches of space, I don't know exactly; I had to get in there sidewise, like that [showing]; after I stepped in there I put my arms up to get in sidewise, and I went to turn to do my work; I put my hand on that roller that the felt goes over; I intended to put my hand on that roller that wasn't moving; instead of getting my hand there I got it caught between the felt and the roll, on this roll right here [showing]; the roll in which I got my finger caught is five or six inches away from the one I thought I was putting my hand on; I put my hand out right after he ordered me in there; my feet were inside of the machine on the floor; I was going to stoop down to pick up the broken paper; just before I caught my hands in this roll, my hands were like this [showing]; I had to get my hands down in order to pick up the paper; I had never known that roll which is shown here, just to the left of the opening [showing] to be out of the machine while it was in operation before that time."

At the close of the evidence, the judge ruled that the plaintiff could not recover and directed a verdict for the defendant; and the plaintiff alleged exceptions.

*J. B. Carroll,* (*W. H. McClintock* with him,) for the plaintiff.

*W. Hamilton,* (*W. H. Brooks* with him,) for the defendant.

LATHROP, J. The machine on which the plaintiff was injured was a calender paper machine, so called, which was divided into three sections. The part where he was injured was called a No. 6 machine. There was a space in the frame of the machine, nine inches wide. To the left of this was a wooden roll eight inches in diameter, called the "idler," which did not move unless paper was passing over it, and was used only on certain kinds of work, and when not in use was taken out of the machine. Five or six inches to the left was a roll seven inches in diameter, called C in the exceptions. Still further to the left were two press rolls, one above the other, the upper one being sixteen inches in diameter and the lower one seventeen inches. These were called in the exceptions D and E. There was a felt which passed over roll C, and thence between the two press

rolls.   The distance from the floor to the top of the standard in which was the bearing wherein the idler roll revolved was about four feet four inches.   The floor of the machine was about two feet above the floor of the room.   The plaintiff was about five feet seven inches in height.

According to the plaintiff's testimony, the paper in passing over the nine inch space broke and ran down to the floor of the machine, and one Murphy, who was in charge of the room, said to him : " Why the devil don't you get in there and throw it out " ; that he put one hand on the standard of the " idler," and the other on the next machine, stepped on to the floor of the machine in the nine inch space, and then stooped down to pick up the paper; that in getting down he attempted to put one hand on the roll called the " idler," but as that roll was not in place, he got his hand caught between the felt and roll C, and his hand was carried along and injured between the two press rolls.

The principal question in the case is whether the plaintiff was in the exercise of due care.   At the time of the accident the plaintiff was between twenty and twenty-one years of age. He had been in the defendant's employ six weeks.   Before that he had been engaged in blacksmithing.   He had also worked in an organ factory, and had been a painter.   When he first came into the employ of the defendant he worked on a screen at the pulp end of the machine, and was then put to work on the other end of the machine where the paper was cut by revolving knives into the desired size.

While the plaintiff had not worked upon the particular part of the machine where he received his injury, he had assisted in taking out and putting in the rolls, and in arranging the felt. He testified : " As I passed along by the side of the machine, there was n't any difficulty in my seeing the various cylinders ; there was nothing to conceal them, the side of the machine was n't covered up."   From the evidence it appears that the plaintiff was at least of average intelligence ; and that he knew the arrangement of the different parts of the machine and the duties they had to perform.

While the plaintiff testified : " I did n't know that if I got my hand between those rollers I was liable to get hurt," he also

testified : " I knew that if I put my hand on the felt and left it there long enough I was liable to get it drawn in between the cylinders, if I was careless enough to leave it out here." He also testified : " I never knew there was any possible way of getting my hand in between the rollers E and D ; I knew if I did I would get hurt."

It seems to us clear that if the plaintiff was justified in going into the space by the order of Murphy, or in so interpreting the order, he knew that he was in close proximity to revolving rolls, where care and diligence were especially required, and that there was a want of that care which the law required him to exercise, in. thrusting his hand at a right angle in among the rolls in order to get it down. It is obvious, when we consider his height and the height of the machine, that he could have got his hands down with safety before beginning to stoop down.

Nor can it be said that the language used by Murphy made any difference. *Taylor* v. *Carew Manuf. Co.* 140 Mass. 150. *Ciriack* v. *Merchants' Woolen Co.* 146 Mass. 182. *Ruchinsky* v. *French*, 168 Mass. 68, 70.

. The plaintiff had had his arm hurt on one of the cylinders two weeks before, and, as was said in *Lowcock* v. *Franklin Paper Co.* 169 Mass. 313, "whatever his testimony," he " must be assumed to have known the danger of his hand being drawn in and being brought in. contact with the hot inward revolving roll." See also *Stuart* v. *West End Street Railway*, 163 Mass. 391 ; *Robinska* v. *Lyman Mills*, 174 Mass. 432.

It is urged that the plaintiff supposed that roll B had been put back in the machine. What he knew was that it had been taken out, and he did not know whether it had been put back or not. If he had used his eyes at all, he must have seen that it was not in place. It was a roll eight inches in diameter. To assist him in going into the space where he went he put his hand on the standard in which this roll runs. The slightest attention would have shown him that the roll was not there.

The view we have taken of the case renders it unnecessary to consider whether there was any negligence on the part of the defendant.

*Exceptions overruled.*