LOUISIANA & ARKANSAS RAILWAY COMPANY v. MILES.

Opinion delivered April 29, 1907.

MASTER AND SERVANT—DUTY TO WARN SERVANT.—A master is not liable for failure to instruct a servant of mature age and average intelligence as to patent and ordinary dangers of the service not caused by the master's negligence.

Appeal from Hempstead Circuit Court; *Joel D. Conway,* Judge; reversed.

*William H. Arnold,* for appellant; *Henry Moore* and *Henry Moore, Jr.,* of counsel.

The master is only required to give instructions as to those dangers which are not patent to ordinary observation. 48 Ark. 333. The servant can only recover upon proof that he did not know of the danger and that the master knew it and did not give warning to him. 19 S. E. 723. The danger in this case was as apparent to Walsh as it could have been to anyone. Being an intelligent man of mature age, knowing the situation, he assumed the risk of injury. 79 Tex. 130. And contributory negligence will be imputed to him as a matter of law. 5 Thompson's Com. Law of Neg. 2 Ed. 35; *id.* 114; 7 Am. & Eng. Enc. of L. 2 Ed. 1059; 51 S. W. 580; 44 Atl. 1069; 56 N. W. 612; 18 N. W. 584; 30 Pac. 249; 27 Pac. 701; 47 N. E. 182.

*McRae & Tompkins* and *W. E Atkinson,* for appellee.

McCULLOCH, J. This is an action brought against appellant railway company by the administrator of the estate of M. L. Walsh, deceased, to recover damages on account of the death of Walsh, which is alleged to have been caused by negligence of the company. The plaintiff recovered a judgment for $2,000 damages, and the defendant appealed. There is no substantial dispute as to the facts.

Walsh was a brakeman in the employ of the railway company, and had been employed in this capacity about thirty days when he received the injury which resulted in his death. He was about 25 years of age when the injury occurred, and had formerly been a telegraph operator, and was thus engaged 12 or 15 years. He is described as a man of more than average intelligence, well educated, healthy and physically strong. He was running on a log train, the work of his train being on the southbound trip from Stamps to supply logging camps with empty cars and to pick up and haul carloads of logs on the return trip. He was injured on the return trip about midday at Gallagher, a station or switch on the road. They were to pick up enough loaded cars at Gallagher to fill out the train, and stopped there to get the cars. Walsh and the conductor were in the caboose when the engine whistled for Gallagher, and the conductor went to the back end of the caboose, and Walsh to the front end to get off while the train was in motion. It was necessary, in order to save time, for them to get off

before the train stopped and walk across to the switch to meet the engine when it backed in on the side track after the loaded cars. The conductor swung off first from the rear end of the caboose and Walsh next from the front end, the speed of the train being three or four miles an hour. Walsh alighted on a pile or ridge of gravel running alongside the track, his feet slid under the caboose, and both legs were cut off. The roadbed at this point was about three feet high, and gravel was deposited along the road ten miles or more for ballasting and to raise the roadbed. The gravel was unloaded along the road from cars by means of a plow which was pulled through the train of cars, and it fell along the edge of the embankment in piles or ridges 12 or 18 inches high. It would then be placed between and under the ties by men working with shovels. This did not interfere with the running of trains.

The complaint charges negligence on the part of the defendant in placing the gravel along the track where brakemen had to alight, and in failing to instruct and advise Walsh of the hazard and danger to be encountered in alighting from a moving train where gravel had been distributed. The case was submitted to the jury upon the question of negligence in the last-mentioned particular.

The only question we are called upon to decide is whether the evidence establishes negligence on the part of the defendant; and, after a careful consideration of the question, we are convinced that no negligence is shown. The injury resulted from one of the dangers incident to the work in which the employee was engaged. He assumed the risk when he took service, and no recovery can be had for the injury. This court said in *Ford* v. *Bodcaw Lumber Co.,* 73 Ark. 49, that "it is not the duty of a master to warn an inexperienced servant of the dangers liable to be encountered by him in the performance of his duties where experience and instruction are not necessary to enable him to do with safety the work he is employed or required to perform." Citing *Fones* v. *Phillips,* 39 Ark. 38; *Railway Co.* v. *Torrey,* 58 Ark. 217. In the same case from which the above quotation is taken, which was a case of a minor suing for an injury inflicted by negligence of the master, the court, speaking of the duty to warn the servant as to patent dan-

gers, said: "If the danger of the employment is patent, and the servant, by reason of his youth and inexperience, does not know or appreciate the danger incident to the service he is employed to do, it would be the duty of the master to warn him of it and instruct him how to avoid it, so far as it can be, before exposing him to it."

Herein lies the distinction between the duty of a master towards a servant of immature age and inexperience, and his duty towards a servant of full age and average intelligence. In case of the former it is the duty of the master to instruct as to patent as well as latent defects if, by reason of the youth and inexperience, the servant does not know or appreciate the danger incident to his employment, and if the master knows or ought to know or take notice of his youth and inexperience. But in the case of a servant of full age and normal intelligence the master does not owe a duty to instruct or warn as to dangers which are open and obvious to the senses of any man of ordinary intelligence.

A person of ordinary intelligence is presumed capable of observing patent dangers. This does not mean that where a patent danger is created by the negligence of the master, the servant of mature years and ordinary intelligence is necessarily presumed under all circumstances to take notice of such danger so as to render him guilty of contributory negligence if he proceeds in the face of the danger. That may depend to some extent upon the circumstances. But where the danger is one that has not been created by a negligent act of the master, and is one which is an ordinary incident to the service, the servant is presumed capable of taking notice of it without warning or instruction from the master, unless on account of youth and inexperience there is reason to believe that he does not know of and appreciate the danger.

Mr. Labatt, in discussing the duty of the master towards servants not of immature years, says that "the master is not required to point out dangers which are readily ascertainable by the servant himself if he makes an ordinarily careful use of such knowledge, experience and judgment as he possesses. The failure to give instructions, therefore, is not culpable where the servant might, by the exercise of ordinary care and attention,

have known of the danger, or, as the rule is also expressed, where he had all the means necessary for ascertaining the conditions, and there was no concealed danger which could not be discovered." 1 Labatt on Master & Servant, § 238. The same learned author makes the following statement of the law in a subsequent section: "It frequently happens that the evidence indicates that the servant was not a person of the normal capacity contemplated by this principle, or that the risk to be encountered was of such a nature that even the possession of a normal capacity would not enable him to appreciate it without special training for, or a practical acquaintance with, the work to which it was incident. The presence of one or both of these elements will frequently render it impossible to say, as a matter of law, that the duty of instruction was not owed to the servant, when, if they were abstracted from the case, the plaintiff would not be allowed to retain a verdict in his favor rendered on the theory that such a duty existed. The qualifying effects of the elements, when considered with reference to the general principle adverted to above, is indicated by the statement that the duty of instruction does not extend to dangers open to the ordinary observation, except in cases of youth, inexperience, ignorance, or want of capacity as a servant."

The Supreme Court of Massachusetts in passing upon this identical question, said: "Where the elements of the danger are obvious to a person of average intelligence using due care, it would be unreasonable to require an employer to warn his employee to avoid dangers which ordinary prudence ought to make him avoid without warning. The mere fact that he can not tell the exact degree of the danger, if the nature and character of it can easily be seen, is not enough to require warning and instruction to a man of full age and average intelligence. Something may properly be left to instinct of self-preservation, and to the exercise of the ordinary faculties which every man should use when his safety is known to be involved." *Stewart* v. *West End Street Railway,* 163 Mass. 391.

The following cases may also be read with profit on this subject: *Collins* v. *Laconia Car Co.,* 68 N. H. 196; *Bjbjian* v. *Woonsocket Rubber Co.,* 164 Mass. 214; *Hoyle* v. *Excelsior Steam Laundry Co.,* 95 Ga. 34; *Gibson* v. *Oregon Short Line*

*Railway Co.*, 23 Ore. 493; *Findlay* v. *Russell Wheel & Foundry Co.*, 108 Mich. 286; *Ferguson* v. *Phoenix Cotton Mills*, 106 Tenn. 236; *Yeager* v. *Burlington & Cedar Rapids Railway Co.*, 93 Iowa, 1; *East Tennessee, Va. & Ga. Ry. Co.* v. *Turvaville*, 97 Ala. 122; *Ill. Cent. Ry. Co.* v. *Price*, 72 Miss. 862.

Now, when we apply the facts of this case to the principles of law here announced, it is readily perceived that there is nothing upon which a charge of negligence against appellant railway company can be justly predicated.

Walsh was a full-grown man of mature years, strong in body and of more than average intelligence. There was no negligence on the part of the company in placing the gravel on the embankment, as that was necessary and customary in the improvement and repair of its roadbed. Walsh necessarily knew that it was there, and the danger of alighting upon it from a moving train, if it was ordinarily dangerous, was obvious to any one. Any person of ordinary intelligence knows that it is more dangerous to alight upon an uneven surface or movable substance than upon a smooth and firm surface. He needed no previous warning or instruction on that score, and it can not be said that the company owed him the duty of giving warning or instruction of a danger which was obvious to him.

Reversed and remanded.

HILL, C. J. (dissenting.) Walsh was in railroad service as dispatcher and changed into the operating department as brakeman and secured a position under a friend of his, Conductor Williams, in order that Williams would take more pains than a stranger in instructing him in his new duties.

After he worked as brakeman about one month, he met his death by alighting from a moving train on a pile of gravel and slipping under the wheels. The company had put gravel piles along the track preparatory to putting it in the roadbed. This was in proper performance of its public duties; and it was in proper performance of Walsh's duties to alight from the slowly-moving train at the point where he did.

Williams testified that stepping in gravel rendered the feet liable to slip, and this was something known to all men of reasonable intelligence and was obvious and patent to observation

and common experience, but he also testified that the effect of getting off a moving train on gravel was a different matter, and a danger not appreciated and understood by an inexperienced man. He said he had learned, by hard falls and mishaps, the dangers incident to alighting from moving trains. He further stated that it was more dangerous to alight on gravel than on sand or dirt. The qualities of gravel, sand and dirt are obvious and understood by all men of average intelligence, yet the action and qualities of those substances as alighting places from moving trains are quite a different matter. Williams testified that an inexperienced man would not have understood and appreciated the danger of alighting on the gravel pile, and that he did not instruct Walsh of this danger, and that he knew Walsh was going to alight from the moving train on the gravel, and this was the proper place for him to alight in the due performance of his work. It was master's duty to inform him of such danger, and the case should have gone to the jury, as it did.