ARKANSAS MIDLAND RAILWAY COMPANY *v.* WORDEN.

Opinion delivered April 5, 1909.

1. MASTER AND SERVANT—RISKS ASSUMED.—When an employee of mature age takes service with his employer, he impliedly agrees to assume all the obvious risks of the business, including the risk of injury from the kind of machinery openly used as well as the method of operating the business then openly observed. (Page 411.)

2. SAME—RISKS ASSUMED BY INEXPERIENCED INFANT.—Where an employee, by reason of youth or inexperience, does not fully realize or appreciate the danger of the service, it is the employer's duty to give proper instructions and to warn him of patent as well as latent dangers; and before the inexperienced servant can be presumed to have

realized the danger and assumed the risk it must be shown that he was instructed and warned of it. (Page 411.)

3. SAME—ASSUMED RISK—WHEN QUESTION FOR JURY.—Where an infant and inexperienced engine hostler, engaged in switching an engine at the railway yards at night, was killed by the negligence of the master in failing to keep a signal light at the switch, the question whether deceased knew of the danger from the failure to keep the signal light at the switch, and assumed same, **was** properly left to the jury. (Page 413.)

Appeal from Monroe Circuit Court; *Eugene Lankford,* Judge; affirmed.

*E. B. Kinsworthy* and *Bridges, Wooldridge & Gantt,* for appellant.

1. In cases of injuries to servants happening in the course of their employment, negligence of the master is not inferred from the mere happening of the accident which caused the injury. It must be proved, the burden being on the party alleging it. Here no negligence is proved, nor any causal relation shown between the absence of the light and lock and happening of the accident. 48 Ark. 460; 75 Ark. 76; 44 Ark. 524; 82 Ark. 372; 87 Ark. 321; 85 Ark. 600; 72 S. C. 398; 5 Am. & Eng. Cas. 167, note 5, cases cited; 75 Ark. 263. If a defect in the switch or track at the place of derailment had been shown, it would have been necessary, in order to make out his case, for appellee to show that the company had notice of it. 46 Ark. 555; 51 Ark. 467; 79 Ark. 437; 74 Ark. 19.

2. In view of his experience, this accident is one of the risks assumed when appellee accepted the employment. 56 Ark. 206; *Id.* 232; 78 Ark. 213; 81 Ark. 343; 82 Ark. 11. If there was no light or lock, it was obvious to one engaged in switching cars. He is charged with notice of these facts, and assumes the risk of running his engine over this track. 53 Ark. 117; 54 Ark. 389.

3. The master is not an insurer of the servant's safety, and is held to ordinary care only in providing a safe place and appliances in and with which to work. 80 Ark. 260, and cases cited.

*H. A. Parker,* for appellee.

1. Not only is the master required to furnish a reasonably safe place and appliances in which and with which the servant is

to work, but, if the servant is inexperienced, the master must also instruct him in his duties and warn him of the danger incident thereto.   81 Ark. 247; 87 Ark. 471.

2.   It was the duty of the master to provide a light and lock at the switch, and failure to do so was negligence on the part of the master, and was a risk not assumed by the servant.   85 Ark. 390; 87 Ark. 321.

3.   The facts and evidence fail to establish. contributory negligence.   The danger was not obvious to one of the youth and inexperience of the deceased.   82 Ark. 83.

McCULLOCH, C. J.   This is an action instituted against the Arkansas Midland Railway Company by F. G. Worden as administrator of the estate of his deceased son, Beecher Worden, to recover damages sustained by reason of the latter's death, which is alleged to have been caused by the negligence of the railway company.   The elements of damages claimed are bodily pain and suffering endured by decedent between the time of his injury and his death, and the expected contributions thereafter to his father.   Beecher Worden was between 20 and 21 years of age at the time of his death, and was employed by the railway company as engine hostler, his specific duties being to take engines to and from the depot and round house at Helena, Ark., one of the termini of the road.   He received the injuries about 9:30 o'clock on Saturday night, December 28, 1906, and died the following Monday morning.   His engine left the rails, fell down an embankment on its side and pinned him underneath, where he was badly scalded by escaping steam and hot water, and remained in that helpless condition for about five hours before he could be extricated by raising the engine.   He suffered pain from the moment of his injury to the time of his death, so intense that the efforts of skilled medical attendants failed to alleviate it.   All the witnesses who saw him testify that his suffering was intense, and that all the time he lay beneath the overturned engine he begged most piteously to be killed, so as to end his suffering.   The trial jury returned a verdict in favor of the plaintiff, fixing the damages at $4,000 for the pain and suffering and $1,300 for the expected contributions to the father.

The young man was in the discharge of his customary duties, taking the engine from the depot to the round house, and was

backing it along the usual route over the main track, when it was derailed and overturned at or near a switch. The switch in question is what the witnesses term a "three-throw," or stub switch; the two rails of the main track being moved by the use of the lever to and from the three connected tracks so as to allow trains to pass over either of the tracks as desired. The two movable rails are called stub rails. When an engine approaches the switch from the stub rail end of the track, it will of course pass onto one of the tracks to which the stub rails are at the time connected; but if it approaches from the other direction, and the stub rails are connected with another of the three tracks, then a derailment of the engine necessarily results, for it runs off the ends of the disconnected rails.

Worden's engine was backing along one of the parallel tracks, approaching the stub rails, and, as before stated, it was derailed at or near the switch. There is some conflict in the testimony as to the precise point at which the derailment occurred; but there is sufficient evidence to warrant the finding that it occurred at the switch, and ran a short distance on the ties before it overturned down the embankment. There was evidence to the effect that the switch was thrown so as to disconnect the stub rail, and the jury were justified in finding that this was true, and that the engine and tender were derailed on that account. There was no lock on the switch nor any lights of any kind, and this is the basis of plaintiff's charge of negligence against the railway company, in failing to exercise ordinary care to provide a reasonably safe place for its servants to work in.

The evidence does not disclose how the switch came to be thrown—whether by accident or design—but it is manifest that if signal lights had been displayed at the switch Worden and his helper, who was on the engine with him, would have been warned of the disconnected track which they were approaching, and could have averted the injury. Several witnesses testified that it was dangerous not to display a light at switches, and the evidence abundantly establishes the fact that the defendant was guilty of negligence in this respect, and that this negligence was the proximate cause of Worden's injury and death.

The defendant pleaded in its answer, and attempted to prove, contributory negligence on the part of Worden in running the

engine at too great speed, and in failing to stop the engine after it became derailed and was running on the ties. This issue was submitted to the jury, and the finding, which is sustained by ample evidence, was against the defendant. The testimony shows by what appears to us to be a clear preponderance that the engine was moving at the ordinary and customary rate of speed for the yard limits, and that as soon as it left the rails Worden made every effort to check the speed and bring it to a standstill.

The most serious question in the case is whether the danger arising from using an unlocked switch, and from the absence of a signal light on the switch, was, notwithstanding the negligence of the defendant in permitting the switch to be in that condition, one of the ordinary hazards of the service, the risk of which the servant assumed when he accepted the employment Worden had been engaged in this particular work about one month, and had been accustomed during that time to taking three and four engines each night along the track by this switch. The evidence shows conclusively that no light had been maintained at the switch since Worden took service to do this work; and the question therefore arises whether the absence of the signal light was an obvious danger to employees on the passing trains, such as they were bound to take notice of; and if so whether they assumed the risk thereof. For, when an employee takes service with his employer, he impliedly agrees to assume all the obvious risks of the business, including the risk of injury from the kind of machinery then openly used, as well as the method of operating the business then openly observed. *Choctaw, O. & G. Rd. Co.* v. *Jones,* 77 Ark. 367; *Southern Cotton Oil Co.* v. *Spotts,* 77 Ark. 458; *Choctaw, O. & G. Rd. Co.* v. *Thompson,* 82 Ark. 11; *Rooney* v. *Sewall & Day Cordage Co.,* 161 Mass. 153.

This is the rule which applies to an employee of mature years and experience in the particular work or business, for there is no duty on the part of the master to warn an experienced servant of obvious dangers, as they are among the ordinary incidents of the service, and he is bound to take notice of these, and must be presumed to have realized and appreciated such danger. *Lousiana & A. Ry. Co.* v. *Miles,* 82 Ark. 534. But the rule is different as to a servant who, by reason of youth or inexperi-

ence in the particular work, does not fully realize and appreciate the danger. In that case it is the duty of the master to give proper instructions and to warn the inexperienced servant of patent as well as latent dangers (*Ford* v. *Bodcaw Lbr. Co.,* 73 Ark. 49) ; and, before the inexperienced servant can be presumed to have realized the danger and assumed the risk, it must be shown that he was instructed and warned of it. *Davis* v. *Ry. Co.,* 53 Ark. 117; *Arkadelphia Lumber Co.* v. *Whitted,* 81 Ark. 247; *Western Coal & Mining Co.* v. *Burns,* 84 Ark. 74; 1 Labatt on Master & Servant, § 291; *Kehler* v. *Schwenk,* 151 Pa. 505; *Wolski* v. *Knapp-Stout & Company,* 90 Wis. 178.

Chief Justice COCKRILL, speaking for the court in *Davis* v. *Ry. Co., supra,* said: "But the service about the unblocked rails was attended with danger, and the knowledge of the fact that the rails were unblocked did not necessarily imply knowledge of the attendant danger. Knowledge of the danger was itself a question of fact; and, if the jury believed that the deceased, by reason of his youth and inexperience, did not know of or appreciate the danger incident to service about the unblocked rails, and that the company had exposed him to the danger without warning him of it, they should have found that the risk was not one he had assumed by entering the service."

Mr. Labatt say this on the subject in section just cited: "In the case of an adult the servant's inability to recover for injuries resulting from ordinary risks is declared in terms which are indicative of the fact that his comprehension of those risks is presumed in the absence of evidence which justifies the opposite conclusion. In the case of a minor, on the other hand, the defense of an assumption of ordinary risks is viewed as one which is merely conditional upon the production of specific and positive evidence going to show that the risk in question was, as a matter of fact, comprehended. In short, where a minor is concerned, ordinary risks are, for evidential purposes, always treated at the outset of the inquiry as extraordinary, and the burden of establishing the servant's comprehension of the particular risk is cast upon the employer." And again the same learned author says: "It is manifest that the inquiry whether a minor servant has assumed in a particular instance the ordinary risks of an employment always resolves itself into an examination of

the weight of the evidence which tends to establish or negative the inference that he understood it."

Now, the evidence in the present case shows that Worden was a minor, with but little experience in the particular work in which he was engaged. There is no evidence that he was ever instructed in the performance of his duties, or that he was ever warned as to the danger of passing along at night by switches without signal lights on them. Of course, the absence of the lights was obvious, and he knew of that, because he passed along there with the engines every night for a month. But was the danger therefrom an obvious one to an inexperienced person? Can we say, as a matter of law, that, without instruction or warning on the subject, Beecher Worden was aware of the danger and appreciated it? For, unless he did so, he did not assume the risk as a part of his contract of service.

Upon the whole, we are of the opinion that this was a question of fact for the determination of the jury, and that there was evidence sufficient to warrant its submission. The instructions of the court on this subject were in accord with these views, and we discover no error in them.

Other errors are assigned, but none of the assignements can in our opinion be sunstained, and there is nothing else of sufficient importance to call for discussion of them here.

Judgment affirmed.