MISSOURI, K. & T. RY. CO. OF TEXAS v. GRAHAM. (No. 47–2711.)

(Commission of Appeals of Texas, Section B. March 5, 1919.)

1. MASTER AND SERVANT ⬤278(7)—PERSONAL INJURY—NEGLIGENCE—EVIDENCE.

In action for injury to station agent, who, after steps had been ‘removed; and while attempting to step from edge of a mixing trough to freight platform and to pull himself up by a railing on platform, fell back into a ditch, which railroad was constructing, *held*, on the evidence, that railroad was not negligent in removing steps and in failing to replace them, or in failing to furnish some other reasonably safe means to get upon platform or a safe railing or other object by which the agent could pull himself to platform.

2. MASTER AND SERVANT ⬤112(1)—PLACE OF WORK—NEGLIGENCE.

That railroad took away steps which were convenient and direct passage for its agent to freight platform, and left known safe routes of travel, did not charge it with negligence because such other routes might have been inconvenient to agent and have required more of his time in performance of his duties.

3. MASTER AND SERVANT ⬤278(13)—INJURY TO SERVANT—DANGEROUS PLACE OF WORK —EVIDENCE.

Evidence in action for injury to station agent, who, after steps had been removed, and while attempting to step from edge of mixing trough to freight platform and to pull himself up by a railing on platform, fell back into a ditch, which railroad was constructing, *held* not to show railroad's negligence in not covering

ditch or taking proper means to prevent any one from falling or stepping into it.

4. MASTER AND SERVANT ⬤97(2) — SAFE PLACE FOR WORK—LIABILITY.

A master must exercise due care to furnish a servant a reasonably safe place to work, and if his negligence renders such place unsafe, with resulting injury to servant, master is liable, if injury is such as under circumstances might reasonably have been foreseen as natural, probable, and proximate result of negligence.

5. MASTER AND SERVANT ⬤281(2) — INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE— EVIDENCE.

In action for injury to station agent, who, after steps had been removed, and while attempting to step from edge of a mixing trough to freight platform and to pull himself up by a railing on platform, fell back into a ditch which railroad was constructing, *held*, on the evidence, that agent was guilty of contributory negligence, proximately causing his injury.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by Sam Graham against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals, and from a judgment of affirmance by the Court of Civil Appeals (168 S. W. 55), the defendant brings error. Judgments of Court of Civil Appeals and of district court reversed, and judgment rendered for defendant.

C. C. Huff, of Dallas, W. R. Abernathy and Wallace Hughston, both of McKinney, and A. H. McKnight, of Dallas, for plaintiff in error.

R. C. Merritt and H. C. Miller, both of McKinney, for defendant in error.

SADLER, J. For a statement of the pleadings in this cause reference is had to the opinion by the Court of Civil Appeals. 168 S. W. 55. The facts on the question of negligence vel non are as follows:

At the time of the alleged injuries for which recovery is sought Graham was the freight and passenger agent of the defendant at McKinney, Tex., and had been such for several years. His duties as such agent were performed at the passenger and freight depots.

It seems that the track of the defendant at this place runs north and south. The passenger station is located on the west side of the track, while the freight station is on the east side. It was Graham's duty to look after the sale of tickets at the passenger depot, to perform his duties with reference to freight matters at the freight office which was situated near the south end of the freight station, and to attend generally to the business of defendant at this station. His duties required that he pass backward and forward from one to the other of these offices.

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Surrounding the freighthouse proper was a platform extending out north, south, east, and west from the building, forming a place upon which to receive and from which to deliver freight. This platform was approximately 100 feet long north and south by 40 feet wide east and west. Along its western side, the platform was about 3 feet above the ground. Along the northern end, it was from 3 to 4½ or 5 feet higher than the ground, being about 3 feet above the ground at the western end and about 4½ or 5 feet at the eastern end. Along the east side, it was from 4½ to 5 feet above the ground. Defendant's passing track ran along the west side of the freight platform. When freight trains were standing on this track, there was a very narrow space between the cars and the edge of the platform, rendering it inconvenient to pass between the cars and the platform. At the northwest corner of the freight platform, there had been for several years steps, which were used in passing from the freight over to the passenger station and vice versa. At the southwest corner of the freight platform, there were steps used in passing to and from the freighthouse. The most convenient route of travel from the passenger over to the freight station and return—the one used commonly by Graham—was by way of the steps at the northwest corner of the freight station.

Graham received his injuries on Monday. During the preceding week the defendant was engaged in rebuilding and repairing a sewer which extended along the north end of the freight platform. This sewer was being dug about 4½ feet deep and about 4 feet wide. The bottom was being covered with cement. Graham knew that this work was being done.

While digging this trench along the north side of the platform the foreman in charge of the work caused a banister or railing to be placed along the north end of the freight platform as a warning to prevent parties from walking off into the ditch. This consisted of three uprights about 3½ feet long, either 1 by 4, or 2 by 4, on top of which was nailed a railing of 1 by 4 or 2 by 4. These standards or uprights were not braced, but were toenailed to the floor of the platform with sixpenny nails. It was a temporary structure to prevent parties from walking off. This railing extended within about 3 or 3½ feet of the northwest corner of the freight platform. The rules of the company prohibited any obstruction on platform nearer than 3½ or 4 feet of the west edge to prevent injury to trainmen hanging on the side of box cars in freight trains passing this platform, requiring this for protection of employés.

On Saturday, the steps at the northwest corner of the platform were removed, and the sewer or ditch dug at this point. At this place, the south edge of the ditch ran about 12 inches under the edge of the platform. After digging the ditch on Saturday, a mixing board, 16 by 9, was placed at the edge of the ditch on the north side about the point from which the steps had been removed. This board extended to the edge of the ditch, was resting upon a secure foundation, and was used to mix the cement and gravel with which the ditch was floored. The cement was put into the ditch Saturday. The south edge of this board was 2½ or 3 feet north and 2 or 2½ feet lower than the top edge of the platform. The ditch was open between the edge of the mixing board and the platform. Graham knew on Saturday that the steps had been removed; that the ditch had been dug; that the mixing board had been placed there in order to prepare the cement for flooring the ditch; and that the cement had been placed in the bottom of the ditch.

After removing these steps there were the following safe ways by which Graham could pass from one depot to the other: One by way of the steps at the southwest corner of the freight platform; another by going to the northeast corner and climbing up on the east side; and when no cars were standing on the passing track along the west side of the platform, he could get on the platform anywhere along the west side.

On the morning of the injury, Graham had been in the passenger depot, selling tickets for the outgoing passenger train. After he had completed this work, he then started over to the freight office. At this time there was a freight train standing on the passing track ready to depart. It appears from the evidence that this train extended the entire length of the platform, and perhaps on south of the south end. Graham came out of the passenger depot at the east door, crossed the tracks, and attempted to get up on the freight platform at the northwest corner by stepping from the mixing board to the platform. In doing this, he stood on the edge of the mixing board with his left foot and placed his right foot on the edge of the platform, then took hold of the top of the railing and undertook to step up on the platform. The railing gave way, and he fell into the ditch, receiving the injuries for which he seeks recovery.

As station agent for the defendant Graham had the direction of the business of the company at McKinney, was in charge of the freight and passenger depots, and familiar with the situation of all of the premises. He knew the work that was being done in digging this sewer and repairing same. It was open and apparent that the railing along the north end of the platform was a temporary structure without any braces.

In order to pass from the passenger depot to the freight depot on the morning of the injury, Graham could have gone the course traveled by him and got up on the platform at the northwest corner; or have gone to the northeast corner and climbed up on the east side of the platform; or continued south to

the southeast corner of the platform, west to the steps at the southwest corner, and ascended by these steps, then across the platform about 20 feet to the office; or he could have gone south from the passenger station, passing around the south end of the freight train, and ascended the steps at the southwest corner. The course pursued by him was the shortest route from the passenger office to the freight office. It was rendered unfit for use by reason of the repair. To have gone by the way of the northeast corner of the platform, passing completely around the freight depot and using the steps at the southwest corner, would have required him to travel in the neighborhood of 110 or 115 feet further than to have gone the route selected by him. To have gone around the south end of the freight train would have necessitated about the same additional distance of travel. Either of these routes would have afforded him a safe way. Both were known to him. He could have selected either of these routes instead of taking the one he did.

He charges the defendant with negligence in the following particulars: (a) In removing the steps which he had been using and failing to replace them or other steps at the northwest corner of the platform; (b) in failing to furnish him a reasonably safe way and means to get up on the platform in going from the passenger station to the freight depot; (c) in failing to cover the ditch or sluiceway and providing proper means to prevent any one from falling or stepping into same; and (d) in failing to provide a safe railing or other object by which he could pull himself up on the platform. He charges that each of the above acts of negligence was the direct and proximate cause of his injury.

Defendant in the Court of Civil Appeals urged many errors in the trial of the cause, among others that the evidence wholly failed to show liability on the part of the company in that no negligence was proved.

The Court of Civil Appeals having held against the company on all of its assignments, the cause is before us on writ of error.

### Opinion.

Many errors of which complaint is made by the defendant in error become immaterial in the view which we have of this case. We are not unmindful of the fact that, in the opinion of the honorable Court of Civil Appeals, the trial judge, and the jury, the evidence was deemed sufficient to establish negligence on the part of the defendant proximately bringing about plaintiff's injuries. We are loath to take a position contra to that which has been held by the learned judge who tried the case, the jury, and the honorable Court of Civil Appeals, but in matters of this character we must be governed

209 S.W.—26

by our own concept in solving the problem which this record has presented. A court of last resort cannot excuse itself from an unpleasant duty. We have very carefully considered the testimony in the record in the view that certainly there will be discovered some evidence justifying the submission of the question of negligence on the part of the defendant to the jury. We cannot agree with the proposition that this record discloses any primary negligence on the part of defendant responsible for plaintiff's injuries.

[1] Was the company negligent in removing the steps and in failing to replace them? There is no charge nor is there any proof that the defendant's agents did not exercise care in removing the steps. The plaintiff knew that these steps were removed. He knew just what was being done by the defendant's employés at the very place that he had been accustomed to use in the performance of his duties. There was nothing done by the agents of the company to conceal any danger. Certainly it could not be charged that it was negligence on the part of the company to remove these steps, especially in view of the facts which will be hereafter mentioned, and since it was necessary to make the repairs to the sewer. In digging the ditch there is no proof or charge that it was being done in a negligent or careless manner. In placing the mixing board near the edge of the ditch it is not charged, nor is there any evidence showing, that this board was negligently put or carelessly set, but the evidence shows, on the other hand, that it was solidly placed. There was no give-away to the mixing board. There is no evidence nor any contention that the employés of the defendant had placed the mixing board at the point where it was situated to take the place of the steps, or to invite its use as a means of passage to the platform. The steps were taken away in broad daylight. The plaintiff knew that they were removed; knew that they had not been placed back. There is nothing in the record which in any manner sustains the proposition of negligence on the part of the company in the removal of and the failure to replace these steps.

[2] Was the defendant negligent in failing to furnish a reasonably safe way and means for the plaintiff to get up on the platform of the freight depot in the discharge of his duties? The evidence shows, without contradiction, that for many years the plaintiff had been an employé of the defendant at this station, and was familiar with all of the surroundings; that the defendant had furnished steps at the southwest corner of the platform by which he could go on to same in passing from the freight depot to the passenger depot, and vice versa; that he might, at some little inconvenience to himself, have made a safe passage by going to the east side of the platform and getting on it there. The company had furnished him places that were

safe, and had brought to him knowledge of the removal of one of these places, but he still had open to him other safe ways. It is true that these safe ways would have required him to take a little more time in going from the passenger over to the freight office, and may have called upon him to walk a few hundred feet further. But he was in the service of the company. It was paying him for his time. Whatever time he may have utilized in passing from one place of work to the other was the defendant's time and not his. That he was pressed with work was not a matter of negligence on the part of the company contributing to or bringing about or causing his injury. That was a matter with which he had no concern, further than his own desire to keep up with his work. The proposition that the company was negligent in removing these steps and failing to furnish to plaintiff a safe way is not apparent from this record. On the other hand, it is apparent from the record that there were safe ways known to the plaintiff, furnished by the company, which he could have used. That he saw fit not to do so was solely within his own option, and not occasioned by any requirement on the part of his employer, and not necessitated by reason of the performance of any duty. We, therefore, cannot accede to the proposition that the company was negligent in failing to furnish to the plaintiff safe routes of travel in the performance of his duty.

Plaintiff says this was the most convenient and most direct route, and that it had been rendered unsafe. We are not willing to say that because the defendant took away a means of passage which was convenient and direct and left known safe routes of travel that it can be charged with negligence because the known and remaining routes of travel may have been inconvenient to its employés and may have required more of their time in the performance of their duties than would have been required by the use of the direct and convenient way. The inconvenience to the employés is the company's inconvenience, and the loss of time of the employés in traveling an inconvenient route is the loss of the company, and not the loss of the employé. The defendant had the right to make these repairs. This record shows that had the plaintiff used the safe way left to him by the company and known to him his injury could have been avoided.

[3] Was the company guilty of negligence in failing to cover the ditch or sluiceway and in failing to take proper means to prevent any one from falling or stepping into same? Under this record we are justified in concluding that there was no railing along the north side of the platform prior to the time work was begun on this ditch. The plaintiff and those parties who have used this platform for the past several years knew that there was no railing along the north side.

When this ditch was begun a railing appeared. A man of ordinary prudence, familiar with the premises, would have concluded upon seeing this railing that something out of the ordinary had occurred. The railing, therefore, would call his attention to the fact that conditions were not as they had been. Ordinary prudence would call upon him to investigate, which investigation would have disclosed the ditch. So we find that the defendant was exercising care in undertaking to prevent injury to parties using the depot platform by reason of the ditch, in that the railing called their attention to the departure from the ordinary usual conditions that had been existing, and put them upon notice and called for the exercise of ordinary prudence on their part.

The ditch was dug by sections. In the daytime, it was an open, visible thing to be seen, and sounded its own warning. At night, attention was called to the situation by lights placed for that purpose. On the Saturday on which this particular portion of the ditch was being dug and being floored with cement, it was open, visible, and plain to be seen. The character of work ipsi was notice to the public of the danger that might exist. The plaintiff not only had the same opportunities to discover the ditch, not only had the same warning that the public had with reference to the character of the work, but he was there in person, saw the ditch, saw the work being done, and knew the conditions. There is no question but that the mixing board was stationary and solid. It is apparent from the record that it was not placed there to be used by any one except those who were in the performance of the labor required with reference to this particular ditch or sewer. There was nothing hidden; there was no danger existing that was not open and patent. In itself the ditch was not dangerous. It could only be dangerous in the event some one undertook to cross it, or carelessly and negligently fell into it. The defendant had not been derelict, because the very facts themselves spoke the warning to the public. It was not an invited passageway over the ditch. The removal of the steps, that they had not been put back, and the conditions while the work was being done, were a warning against the use of that way of passage. The facts in this record do not show negligence on the part of the company in the particular of which complaint is here made, but show the exercise of that care incumbent upon the defendant.

Was the company negligent in failing to provide a safe railing or other object by which plaintiff could pull himself up on the platform? It may be conceded that the railing which was placed along the north edge of the platform was not such as was of sufficient strength to be used as a means by which to pull oneself onto the platform, but we are

of opinion that of itself would not be sufficient to bring responsibility to the defendant for an injury resulting in its use for such purpose. What duty did the defendant owe the plaintiff in this particular? 'From what has already been said, it was apparent to the plaintiff that the defendant had furnished him a safe way which he could use in the performance of his duty. The railing itself spoke the use for which intended and unquestionably in itself warned the defendant of its unstable character. All of the facts connected with the digging of the ditch, the removal of the steps, the condition in which the railing was, and the position of the mixing board, informed plaintiff of the purpose of the defendant for the time being to withdraw its duties to him in the matter of using the northwest corner of the platform as a route over which to travel in the performance of his labors. This railing under the evidence was not built to be used as a means for pulling oneself onto the platform. Its manifest purpose from its construction, from its temporary character, from the character of the work being done, was to act as a warning, and the defendant was performing its duty toward the public and towards the plaintiff in the way of warning, and this railing was being used only in connection with that duty.

Is it right to say that the defendant, having furnished safe ways of passage, and being then engaged in withdrawing from use one of these ways, was under any duty whatever to do anything with reference to this railing which should tend to render it a stable structure to be used by the plaintiff in traveling a way which the defendant had for the time being rendered unfit for use? There is no evidence that the defendant extended to the plaintiff, either by implication or otherwise, an invitation to use this means of passage. We cannot see wherein it owed to the plaintiff any duty with reference to this railing further than the duty which it had performed in placing it there as a means of warning, calling attention to the changed condition of affairs and putting in motion the mind of a prudent man to the end that he might not undertake to use that route while improvements were then going on. We have been unable to put our finger on any evidence in this record showing that the defendant owed the plaintiff the duty of rendering this railing safe as a means to be used by him in the performance of his services for the company, or otherwise. We are unable to find any evidence in this record sustaining the view that the defendant was negligent in the matter of the construction of this railing.

The conclusions presented are intended as application of the general principles of law governing in matters of this character to the particular facts in this case.

[4] The rule touching actionable negligence in matters of this character is believed to be concisely stated as "the duty of the master to exercise due care to furnish the servant a reasonably safe place to work, * * * and, if the negligence of the master renders such place unsafe and the servant is injured in consequence thereof, liability attaches, provided the injury is such as, under the attendant circumstances, might reasonably have been foreseen; that is, if it is the natural and probable, and hence the proximate, result of the negligence." Smith v. T. & P. Ry. Co., 24 Tex. Civ. App. 92, 58 S. W. 151; Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162.

Applying this principle to the facts in this case, it is necessary for the evidence to show that the defendant railway company had negligently rendered unsafe the way formerly used by plaintiff over which to travel in performing his duties, and that the defendant might reasonably have foreseen that as a natural and probable result of this negligence the injury to plaintiff would occur. The evidence in this record fails to measure up to this requirement.

In T. & P. Coal Co. v. Kowsikowsiki, 103 Tex. 173, 125 S. W. 3, the rule is stated that:

"Where the particular thing causing the injury has been shown to be under the management of the defendant, or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose for want of care."

In the case at bar the railing, mixing board, and the ditch were under the control of the defendant railway company. The plaintiff also was, by reason of his position as agent, in charge of the properties of the company at McKinney, and an actor on behalf of defendant in managing the property. Further, the facts in this record do not show that the defendant was negligent in the particular duties resting upon it, and negatives want of care on its part. In the Coal Company Case the court makes the further statement that:

"Negligence is not to be imputed either to him [the plaintiff] or the defendant's other servants without proof; and a state of facts in which the cause of the accident cannot be found does not warrant a conclusion that one rather than the other produced it. We cannot presume in favor of one and against the other. Evidence must be brought by a plaintiff, having the burden of proof, sufficient to justify an inference of negligence on the part of the defendant, and none such can be drawn from an occurrence which, while indicating negligence somewhere, is as consistent with the hypothesis that it was his own [plaintiff's] or that of one in whose right he sues as that it was that of the other party."

In St. L. S. W. Ry. Co. of Tex. v. Highnote, 99 Tex. 27, 86 S. W. 924, in speaking of the rule applicable in that case, the court says:

"By his own evidence it is shown that Highnote did not act upon the suggestion of the conductor or any trainman in the employ of defendant. On the contrary, by using the bell, he undertook to do that which under the agreement it was the duty of the conductor to do; that is, to cause the train to reduce its speed and to determine when that speed had reached a safe point at which he would be permitted to leave the train. Having assumed to perform these acts himself instead of calling upon the conductor to do so, and, having by his own judgment determined the propriety of his act, his injury was the result of his own conduct. There is no form of action known to the law (and the wit of man cannot invent one) in which the plaintiff will be allowed to recover for an act not done or caused by the defendant, but by himself.' "

In the present case to permit a recovery under the facts in this record would be permitting the plaintiff to recover for an act not done by the defendant, but performed by the plaintiff in the exercise of his own independent judgment.

G., C. & S. F. Ry. Co. v. Kizziah, 86 Tex. 89, 23 S. W. 578, supports the proposition that negligence on the part of the railway company in this case is not to be inferred from the fact that the steps had been removed and not replaced; that the railing was not of sufficient strength to be used as a lever or as a means by which plaintiff could pull himself onto the platform.

In Crawfordsville Trust Co. v. Nichols, 121 Ark. 556, 181 S. W. 904, the Supreme Court of Arkansas, passing upon a like case, says:

"We are also of the opinion that the court should have instructed the jury as a matter of law that Alfrey was not negligent, under the circumstances, in failing to warn his employés of the danger and in failing to place a barrier around the excavation for their protection. The allegations of the complaint as to negligence were not proved. Alfrey, at the time of Maggard's injury, was doing all that any man of ordinary prudence would be required to do. The excavation was suddenly made during the night by the bursting of a pipe, and it was discovered as soon as it could have been done in the exercise of ordinary care, and the employés had set about making the repairs, and were so engaged when Maggard came along and fell into the hole that the other employés were then draining."

That case arose on this state of facts: Maggard had been working at the trust company's plant long enough to be familiar with the premises, and was killed while walking through a passageway commonly used by the employés, where there was a steam pipe which had burst and washed away the ground, leaving a cavity full of boiling water at a time when it was obvious that more steam was escaping from the pipes than usual, being so dense that it covered the passageway. This condition was discovered, and in the exercise of ordinary care the employés set about making repairs, but there was no guard rail or warning displayed, and Maggard, while the employés were making these repairs, came through the passageway, fell into the hole filled with boiling water, and received injuries from which he died. The court here holds that the company was not liable, and in support of its holding cites Stuart v. West End Ry. Co., 163 Mass. 391, 40 N. E. 180; also cites L. & A. Ry. Co. v. Miles, 82 Ark. 534, 103 S. W. 158, 11 L. R. A. (N. S.) 720.

In the Miles Case above cited the court states that the plaintiff "was a full-grown man of mature years, strong in body and of more than average intelligence. There was no negligence on the part of the company in placing the gravel on the embankment, as that was necessary and customary in the improvement and repair of its roadbed. Walsh necessarily knew that it was there, and the danger of alighting upon it from a moving train, if it was ordinarily dangerous, was obvious to any one. Any person of ordinary intelligence knows that it is more dangerous to alight upon an uneven surface or movable substance than upon a smooth and firm surface. He needed no previous warning or instructions on that score, and it cannot be said that the company owed him the duty of giving warning or instruction of a danger which was obvious to him."

[5] In this case the plaintiff was not only a full-grown man, but he had for seven years been in charge of this particular ground and this particular place of business of the company. He was familiar with these premises. He knew that the repairs were being made. The changed conditions warned him of the probable unsafeness of the way and the advisability of using the other safe ways. The evidence does not present any primary acts of negligence on the part of the company in making those repairs or in the manner of warning against the use as a means of passage of the place where plaintiff's injury occurred.

The defendant had the right to repair this sewer, if it were not in fact a duty to do so. So long as it exercised care in doing the work and to warn of the changed conditions, to call attention to the situation, to use proper means by which to bring home notice of the repairs and of the situation of things, it was acting within its rights. The evidence fails to show any negligence in these matters, and the record establishes that plaintiff's own independent negligence brought about his injury. This effort to use this way with full knowledge of all the conditions and in disobedience to the warnings given was the direct and proximate cause of his injuries, and they did not result from that want of care incumbent upon the defendant.

The evidence does not present a condition of affairs wherein the defendant could have reasonably anticipated that the agent in charge of its depot, familiar with its grounds

and cognizant of the conditions brought about by the necessary repairs, would have undertaken to use the means which he did to pass from one place of employment to another.

We are therefore of opinion that this record discloses a state of facts showing that plaintiff's negligence was the proximate cause of his injuries, and that no primary negligence is shown on the part of the railway company.

We recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and that judgment be here rendered for the defendant.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.