IDEAL CEMENT COMPANY *v.* HARDWICK.

4-7530                                              185 S. W. 2d 266

Opinion delivered February 12, 1945.

164

*Steel & Steel,* for appellant.

*Cecil E. Johnson, Jr., J. G. Sain* and *C. E. Johnson,* for appellee.

McHANEY, J. This is an appeal from a judgment against appellants, Ideal Cement Company and its foreman, Earnie Harris, in favor of appellee for personal injuries received by him in an attempt to disengage an electric cable, from a pole to which it was attached, by order of said foreman and in which he was severely injured by the electric current passing through his body. The cause of action arose before the effective date of the Workmen's Compensation Law, Act 319 of 1939.

The cement company owned an electric caterpillar shovel which was used to load rock from the quarry upon cars on an adjacent electric railroad track. It was operated by electricity taken from a high tension line, carrying 2,300 volts, supported by poles along the railroad track by use of a flexible cable attached to the shovel at one end and to a box on a pole at the other end. In order to move the shovel, as the work of loading rock onto the cars progressed, it was necessary to detach the cable from a pole and attach it to another nearer the shovel. Each pole along the railroad has attached to it what is called a "take-off box," to which the end of the flexible cable is attached to get power to operate the shovel.

Appellee was and, for several years had been, employed by the cement company as a common negro rail-

way laborer, to maintain the track of the very short line of railroad in its quarry. He performed no other service for it, except at the direction of his foreman, Harris. He was not an electrician and knew very little about the danger of working with electric current.

On the day of his injury it became necessary to move the shovel and, therefore, to disconnect the cable from the pole to which it was attached and attach it to another. Two other employees with rubber gloves were holding up the cable and the foreman directed appellee to leave his work on the track and go to the pole and disconnect the cable with certain wrenches he had, and told him to hurry. Appellee testified: "Told me to take the works from the switch box and I started walking and he said, 'Hurry up, I am waiting on you.' I ran up there and tried to take it loose as quick as I could." It appears that the end of the cable was attached to the "take-off box" by three bolts and nuts or poles, and to disconnect same it was necessary to unscrew the nuts. Instead of first pulling the switch to cut off the current, appellee undertook to unscrew the nut with the wrench and current passed through his body. He says: "I just stuck to the tap that I tried to take off," and he continued to stick to it until Harris told one of the other employees to take the "hot stick" and pull the switch on the box, which he did and appellee fell to the ground. He said that Harris never told him to pull the switch with the hot stick, that he was never warned of the danger, and that he never at any time loosened the bolts that connected the cable to the box.

The principal negligence alleged and relied on is that appellee, an inexperienced employee, in so far as electrical appliances are concerned, was ordered to disconnect the cable, a place of danger, without warning as to the danger and without first directing him to pull the switch with the "hot stick." Pleas of contributory negligence and assumed risk were interposed. Trial resulted in a verdict and judgment for $3,250,

On this appeal appellants argue for a reversal the insufficiency of the evidence, erroneous instructions for appellee and excessiveness of the verdict and judgment.

We think the evidence was sufficient to take the case to the jury on the alleged negligence of appellant and its foreman in ordering appellee to do a highly dangerous job without specifically warning him at the time that it was dangerous and to take the "hot stick" and pull the switch before undertaking to unscrew the connections at the "take-off box." It is admitted that no specific warning was given and no direction to pull the switch. While it is shown that safety meetings were held, at which employees were warned generally of the dangers, we think, under the facts presented here, where appellee was taken from a job he was then doing on this track, and was ordered to disconnect the cable and to hurry up in doing it, without any direction whatever to pull the switch, it was a question for the jury to determine whether this was negligence and whether appellee knew and appreciated the danger and was also negligent under the circumstances. The court fully instructed the jury on the law of comparative negligence as between the cement company and appellees, and we cannot say there is no substantial evidence to support the verdict. We have many times held that where an employee, by reason of either youth or inexperience, does not fully realize or appreciate the danger of a particular service he is directed to perform, it is the employer's duty to give proper instructions and to warn him of patent as well as latent dangers; and that before the inexperienced servant can be presumed to have realized the danger and assumed the risk it must be shown that he was instructed and warned of it. *Ark. Mid. R. Co.* v. *Worden,* 90 Ark. 407, 119 S. W. 828.

Appellants question the correctness of all nine of the instructions given by the court at the request of counsel for appellee. No specific objections were made to any instruction given and the principal objection now made to them is that there was no proof to justify giving them. We have carefully examined them and find the objections

to them now made for the first time are without substantial merit. It is not contended that any of them are inherently erroneous.

It is finally said that the verdict is excessive. We are convinced that it is rather moderate, when his serious injuries and present condition are considered. One finger on his right hand was burned and rendered totally useless. The bottom of his right foot was burned and a burned place on one of his legs which was and now is totally or partially paralyzed, so that he is forced to walk with a cane. He is unable to do manual labor, whereas prior to his injuries he was a strong and able-bodied man, doing hard labor every day. We cannot say the verdict is excessive.

Affirmed.

Millwee, J., disqualified and not participating.